## MILLER & COBB v. McINTYRE.

1. The indorsement of a bill single, is in itself a distinct and substantive contract, and if it does not look to any other place, will be governed by the *lex loci contractus ;* and where it is made in another State, in which the common law is presumptively in force, to fix a liability upon the indorser, it is incumbent upon the indorsee to show by a suit prosecuted against the obligor, that the amount of the specialty could not be collected of him, or else excuse the prosecution of such a suit by proof of the obligor's insolvency, or the production of a statute modifying the common law.

2. A declaration against the indorser discloses a good cause of action, which shows that debt is past due, alledges the indorsement in this State of a bill single, that the obligor was then, and still is a resident of another State; that he then was and still continues wholly and notoriously insolvent, so that no part of the debt could be collected of him by suit.

3. It is not necessary, in an action upon the indorsement of a bill single, for the indorsee to prove the consideration which moved from him to the indorser—the statute makes the writing evidence of the debt or duty, and requires the defendant to deny it by plea, supported by affidavit ; and this, although the paper indorsed was not negotiable at common law, and the indorsement was made in another State.

Error to the Circuit Court of Sumter.

THIS was an action of assumpsit at the suit of the plaintiffs in error against the defendant, as the indorser of four specialties. The declaration contains eight counts, each of which were severally demurred to, demurrers sutained, and the plaintiff declining to amend, judgment was rendered in favor of the defendant. Upon each indorsement are two counts, which vary from each other, but present a model of the entire declaration. The first count alledges that James Miller executed his bill single under seal, by which he promised to pay Angus McIntyre, on, &c., thirty-five dollars; and that afterwards, on, &c., the said McIntyre, in the county of Kemper, in the State of Mississippi, for value received indorsed and assigned the same to the plaintiffs. It is then averred that Miller was a resident of Mississippi at the time of the indorsement, and still continues to reside there ; and is wholly insolvent, so that no part of the the debt can be collected of him by legal process : In consequence of which, and because the laws of Mississippi do not require a suit to be brought against the obligor under such circumstances in order to fix the indorser's liability, no action was brought against Miller.

The second count avers that the indorsement was made in Sumter county, Alabama; that Miller then was a resident of Mississippi, and hitherto has continued to reside in that State. *Further*, that he then was, and still continues, wholly and notoriously insolvent, so that no part of the debt could be collected of him by legal process.

J. G. BALDWIN, for the plaintiff in error, made the following points : 1. It is averred in one of each set of counts, that the assignment was made in Mississippi. This being the case, the liability of the indorser must be determined by the laws of that State, which, in the absence of all proof upon the subject, it will be inferred are conformable to the English common law. The law merchant does not regulate the assignment of bills single, and at common law a demand and notice were not necessary to charge the assignor —it was only where a suit against the obligor would proba-

bly be availing, that it was necessary to sue him. Where he was altogether insolvent, an action might be instituted against the assignor, alledging this as an excuse for not suing. [1 Call's Rep. 497; 2 Wash. Rep. 219; 5 Cranch's Rep. 142, 153-4; 4 Munf. Rep. 455; 6 Id. 351, 391; 6 Porter's Rep. 426; 3 Ala. Rep. 615.] 2. Although the assignment was made in Alabama, yet if the obligor is a non-resident and insolvent, the assignee need not go abroad to sue him. [Cl. Dig. 383, § 12; 5 Stew. & P. Rep. 96: 6 Porter's Rep. *supra.*

J. METCALFE, for the defendant in error. The specialties of which the defendant is attempted to be charged as an indorser, do not come within the section of the statute cited by the plaintiff's counsel; but if they were assigned in 'Alabama, the assignment is to be controlled by the provision relating to notes, &c. of a less amount than fifty dollars. [Clay's Dig. 383, § 15.]

· Conceding that the present case is to be decided by a reference to common law principles, and it is insisted that the declaration is defective, in not disclosing the consideration for the assignment; which is necessary in order to show a legal liability. [2 Bibb's Rep. 424; 3 J. J. Marsh. Rep. 268; 4 Porter's Rep. 524.] As to the count which alledged what the law is in Mississippi, he cited 1 Mass. Rep. 103; 8 Id. 99; 10 Wend. Rep. 75.

If the assignee is ignorant when he receives the paper, that the obligor resides out of the State, perhaps he may not be required to sue; but if he is then informed of his non-residence, he is not excused from the necessity of suing the obligor, where he may be found. [1 Ala. Rep. 159; 6 Id. 865.]

COLLIER, C. J.—The indorsement by the defendant, it is alledged, assigned to the plaintiff the entire interest in the bill single made by Miller. It was then a distinct and substantive contract, and like all others, which do not look to any particular place of performance, must be governed by the *lex loci contractus.* In the first count the indorsement is al-

Miller & Cobb v. McIntyre.

ledged to have been made in the State of Mississippi, and must of course be controlled by its laws.

We cannot judicially know what are the laws of a sister State, but in the absence of all opposing proof, it must be presumed, that those members of the confederacy who trace back their existence to the same common origin with our-selves, acknowledge the English common law, so far as it is adapted to our circumstances, and the nature of our institu-tions. Now a bill single is not assignable by indorsement, so as to transfer the legal interest to the indorsee within the rules of the *law merchant;* and acting upon the presumption we have stated, it must be inferred that such is still the law of Mississippi. The inquiry then arises, is the undertaking of the assignor direct, or does it impose upon the assignee the performance of any act as a condition upon which his liabili-ty depends? We answer, that it is incumbent upon the as-signee to show, by a suit prosecuted against the obligor, that the amount of the specialty could not be collected of him, or else excuse the prosecution of such suit by proof of the obli-gor's insolvency.

The second count is clearly good, if Ivey v. Sanderson, 6 Porter's Rep. 420, is a correct exposition of the law. In that case, a bill single was indorsed in this State, but the makers resided in North Carolina, at the time of the assign-ment, and still continued residents of that State. The court said, "We think it is competent for the assignee of a bond, &c., situated as the plaintiff, to sue his assignor, if he has used due diligence to obtain payment from the obligor, &c., and has failed. If the obligor was insolvent, so that a suit would be unavailing, its prosecution would be dispensed with; but without this, or some other reasonable excuse, it could not be pretermitted with safety. What would be diligence in such case, would of course be a question to be determined by the jury, under the instructions of the court as to the law. But we consider it clear, upon authority, unless there was an effort to coerce payment from the obligor, &c., or some satisfactory reason furnished for the neglect to make it, the assignor could not be charged." This decision may perhaps be considered as covering both the counts in the case at bar, and to show that each of them discloses a good cause of ac-

81

tion. But be this as it may, it is perfectly conclusive as it respects the second count.

It is however argued for the defendant in error, that conceding the law to be as we have stated it, to authorize its application to the case before us, the declaration should have set out the consideration for the assignment by the defendant. This it is insisted is essential to give to the assignee a right of action against the assignor in virtue of the common law, which determines the liability of the parties. The influence to which this argument would otherwise be entitled, we think is entirely taken away by the statute which declares, whenever suit shall be commenced in any of the courts, founded on any writing, whether the same be under seal or not, the court before whom the same is depending, shall receive such writing as evidence of the debt or duty for which it was given; and the defendant shall only deny the execution of such writing, by plea supported by affidavit. [Clay's Dig. 340, § 152.] This enactment has received a liberal interpretation, and has been held not only to apply to writings which in themselves evidence a liability, but to such as do not in terms express the contract of the parties but make the liability of the promissor to depend upon the performance of conditions which the law implies. 4 Porter's Rep. 515, and several subsequent decisions. The act does not interfere with the rights of the parties, but merely prescribes a rule of evidence, which must be applied to all writings upon which suits are brought in our courts, no matter where made. Its provisions are the *lex fori*, and are applicable alike to written contracts, whether made in this State or *ex territorium*.

It follows from what has been said, that the demurrers to the declaration should not have been sustained. The judgment of the Circuit Court is consequently reversed, and the cause remanded.