## MANNING *vs.* MANNING.

1. The act of 1848, "securing to married women their separate estates," has no retro-active effect to defeat the marital rights which had vested in the husband prior to its passage; and where he had reduced to his possession as husband, before the passage of that act, his wife's interest in certain slaves, their subsequent sale by order of the Chancery Court, for the purpose of distribution, would not have the effect of divesting his rights and turning the money into a chose in action.

2. Husband and wife being entitled to certain funds in the Chancery Court (the separate property of the wife, which the husband was entitled to hold as her trustee without accounting), the wife filed her petition in said court, alleging her husband's incapacity and unfitness to act as her trustee, and praying that another trustee might be appointed to take charge of the fund ; the evidence showed that she had abandoned him without sufficient cause, and removed beyond the jurisdiction of the court with another man, while it failed to establish the husband's alleged incapacity and unfitness : The petition was dismissed, at the costs of the next friend of the petitioner.

APPEAL from the Chancery Court of Lowndes.
Heard before the Hon. J. W. LESESNE.

A bill was filed in the Chancery Court of Lowndes for the partition of certain slaves among the children of John M. Mock, in which partition had been decreed, and a sale of the slaves ordered. After the sale, and while the money was in the hands of the register, Emily Manning, who was one of the children of said Mock, filed her petition in said court against her husband, Moses T. Manning, in which she alleged that she was entitled to her share of said fund in her own right, "being one of the children of said Mock named and provided for in said deed under and by virtue of which said decree of partition and distribution was rendered"; that she was married to her said husband on the 23rd of December, 1847, and continued to live with him until August, 1848, when she returned to her father's house, in consequence of his adultery and other misconduct. In addition to the charge of adultery on the part of the husband, the petition alleges his intemperance, profligacy and utter unfitness to act as her trustee ; and asks that said fund be settled upon petitioner

for her sole and separate use and support, and that another trus-
tee may be appointed to take charge of it.

The husband answered the petition, denying the alleged mis-
conduct on his part; alleging that his said wife had abandoned
him without just cause, and eloped with one Benjamin Kelly,
with whom she was now living in adultery in Texas; and claim-
ing that, "under the provisions of the act of 1849–50, he is en-
titled to have and receive said sum of money, now in the hands
of the register, as the trustee of his wife." The answer also
contains a demurrer to the petition.

It is unnecessary to state the evidence, as no question of law
arises upon it. The Chancellor rendered a decree in favor of
the petitioner, and his decree is now assigned for error.

I. B. Stone assigned errors for the appellant; and Watts,
Judge & Jackson filed a written argument for the appellee.

CHILTON, C. J.—The Chancellor, in his decree, appears
to have overlooked the demurrer in the answer to the petition.
It is certainly defective, in failing to show that the property
which was ordered to be sold, and on account of the sale of
which the money, sought to be obtained and settled to the sole
and separate use of the wife, accrued, had not, before the sale,
been reduced to the husband's possession.

If the husband's marital rights had attached,—in other
words, if he had reduced the slaves into possession as husband,
the subsequent sale by order of the Chancery Court, for the
purpose of a more equitable distribution, by which the proceeds
would be substituted for the property sold, would not have the
effect of divesting his right and turning the money into a chose
in action. The petition avers that the marriage between the
petitioner and her husband, Moses T. Manning, took place in
December, 1847, before the passage of the act "securing to
married women their separate estates," &c.; and whatever right
to the property had vested in the husband, in virtue of his mar-
riage, before the passage of said act, namely, the 1st of March,
1848, remained unaffected by that act, since it has not any re-
tro-active effect to destroy vested rights.

But the nature of the tenure by which the property was
held, is not set forth in the pleadings, nor any right asserted by

the answer as having accrued to the husband in virtue of his possession; and inasmuch as the defendant submits to hold the money, and actually bases his right to it on the act of 13th of February, 1850, making him trustee of his said wife of the property which accrues to her, we shall proceed to consider the case in this latter aspect.

The petition proceeds on the ground, that the wife has been compelled by the husband's misconduct to abandon him—that he is an improvident and intemperate man, unfit to manage this fund as trustee.

The defendant denies that he mistreated his wife as charged, and insists that she has abandoned him without his fault, and is now living in adultery with one Benjamin Kelly; also denies the charges as to his unfitness to act as trustee. The proof, while it shows some obscene and disgusting conduct on the part of the defendant below, fails altogether to make good the allegations of the husband's intemperance, or unfitness, from any cause, to take charge of the funds; while, on the other hand, it very clearly shows that petitioner has gone off to Texas with said Kelly. The case then amounts to this: A husband and wife being entitled, in right of the wife, to certain funds in the Chancery Court, which is the separate property of the wife, but which the husband, as trustee, is entitled to hold, without being required to account, the wife, without sufficient cause, abandons the husband, and removes with another man beyond the jurisdiction of the court, and now applies for the fund as a means of providing her a maintenance, and seeks to have the husband excluded as trustee and another appointed.

The only reason assigned by the Chancellor, for refusing to permit the husband to occupy the relation of trustee to the fund, is, because of the situation of the parties, living, as they are, separately, under the circumstances shown by the record. He concedes that the proof may well be disregarded, as establishing nothing material in the cause. But we are of opinion, the relative situation of the parties furnishes a strong reason for the court's refusing to be active in taking the fund from the husband. This is not the case of a wife asserting her equity, to obtain a settlement out of her estate, which the husband is endeavoring to recover, and which, when recovered, would belong to him; for both the parties concede that the *corpus* of the fund

belongs to the wife, as her separate estate under the statutes of this State, and will not be changed when it goes into the husband's hands, so far as the wife's right to it is concerned. But it is an application merely to oust the husband as trustee, and to appoint another,—to provide a maintenance for the wife out of the profits, she having abandoned her husband, where a maintenance was afforded her, and gone off with another. Her wrongful abandonment of her husband furnishes no reason why the court should deprive him of the right which the statute confers upon him. It must not be supposed, that the objects of the statutes of March, 1848, and February, 1850, securing to married women separate estates, was to render them independent of their husbands, and to enable them, in violation of all the duties they assume by entering into the marriage state, to abandon their husbands at pleasure, and throw themselves upon such property for a support; for, by the terms of the third section of the act last referred to, the property so secured shall "vest in the husband as trustee of the wife; and the husband shall be authorized, so long as he shall continue such trustee, under the provisions of the act, to have, possess, control and manage all such separate estate, without liability to account to the wife, her heirs, executors or assigns, for the rents, proceeds and profits thereof." Here then is a right conferred on the husband, a valuable, beneficial right, of which he is not to be deprived, unless he forfeits it in some way by his misconduct, or inability to discharge the duties springing out of it. The record in this case fails to show that he has done, or omitted to do, anything which should work such forfeiture.

The wife having rejected the support which was furnished at the home of her husband, and having abandoned him without sufficient cause, must take the consequences of her imprudence. She cannot set up her own wrong as a reason for depriving her husband of a right clearly conferred by the statute.

The decree of the Chancellor must consequently be reversed, and a decree here rendered dismissing the petition.

Let the appellant recover of the next friend of the appellee the costs of this court and of the court below.