# McDOUGALD'S ADM'R *vs.* RUTHERFORD.

| 30 | 253 |
| 98 | 311 |

| 30 | 253 |
| 127 | 639 |

| 30 | 253 |
| 130 | 418 |

[ASSUMPSIT ON PROMISSORY NOTE BY ENDORSEE AGAINST ENDORSER.]

1. *Liability of endorser.*—In declaring against the endorser of a promissory note, at common law, it was necessary to aver a demand and notice, or an excuse for the omission of either; while, under the statute of this State respecting notes not payable in bank, it is necessary to aver the institution of a suit against the maker, and its prosecution to a return of "no property" on an execution.

2. *Pleading foreign statute as to liability of endorser.*—In an action against an endorser, an averment in the declaration, "that by the laws of the State of Georgia, where said endorsement was made, the said defendant became liable to pay said sum of money, in said note specified, to said plaintiff,"—is but the statement of a conclusion as to the effect of the foreign law, and the rights and liabilities of the parties under that law.

3. *Pleading matters occurring after suit brought.*—Facts which occur after the commencement of the suit, but before issue joined or plea pleaded, must be pleaded to the further maintenance of the suit; while facts which occur subsequent to the joinder of issue or the interposition of a plea, must be pleaded *puis darrein continuance*.

4. *Conclusiveness of decree rejecting claim against insolvent estate.*—A final decree of the probate court, in the matter of an insolvent estate, rejecting the claim of a creditor, to which objections were filed within the time allowed by law, is final and conclusive on the creditor, if he appeared and was a party to the issue made up as the statute directs, notwithstanding the pendency of a suit on his claim in the circuit court at the time the decree of insolvency was rendered.

5. *When plea of non est factum is necessary.*—The statute of this State, (Clay's Digest, 340, § 152,) requiring a sworn plea to put in issue the execution of any written instrument declared on, applies to instruments executed in another State.

6. *Conflict of laws as to interpretation of contract.*—The interpretation of a contract, and the obligations which it imposes on the respective parties, are to be determined by the *lex loci contractus*, and not by the *lex domicilii*.

7. *Charge invading province of jury.*—A charge to the jury, assuming as proved a fact which the evidence only tends to prove, is an invasion of their province, and therefore erroneous.

APPEAL from the Circuit Court of Russell.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by Adolphus S. Rutherford against the administrator of Daniel McDougald, deceased; was founded on the intestate's endorsement of a promis-

sory note for $115, executed by John H. Watson and B. W. Walker, dated "Columbus, Dec. 31, 1844," and payable, twelve months after date, to Augustus Grant or bearer; and was commenced on the 14th March, 1851. The declaration, after setting out the execution of the note, and its endorsement by the defendant's intestate at Columbus, Georgia, averred that, "by the laws of the State of Georgia, where said endorsement was made, the said Daniel McDougald became liable to pay said sum of money, in said note specified, to said plaintiff; and being so liable," &c. A demurrer to the declaration was interposed, but overruled by the court.

The defendant pleaded, 1st, *non assumpsit;* 2d, the statute of non-claim; and his other pleas were as follows: "3. This defendant was appointed administrator of the estate of said Daniel McDougald, deceased, by the orphans' court of Russell county, Alabama, on the 4th March, 1850; and on the 10th November, 1851, by a judgment and decree of said orphans' court, the estate of said decedent was declared and decreed to be insolvent, in pursuance of a report previously made by the said administrator, in due order of law, which report represented said estate to be insolvent; and the claim of the said plaintiff, being for the same cause of action, was presented to said probate court of Russell county, within six months, and prosecuted therein; and the administrator filed objections to the allowance of said claim, within nine months from the said declaration and decree of insolvency; and upon a *full* (?) hearing by said court of the evidence and agreement in relation to the said claim, and the objections thereto, the said court did grant the motion of the administrator, and reject and disallow the claim, in and by a decree made and rendered on the 17th January, 1853. 4. Defendant saith, that the estate of said decedent was declared insolvent, by said probate court of Russell county, on the 10th November, 1851. 5. General denial that the law of Georgia is as alleged."

The plaintiff demurred to the third and fifth pleas, took issue on the first and fourth, and replied to the second that this suit was instituted on the 14th March, 1851.

The court sustained the demurrer to the third and fifth pleas, and overruled a demurrer to the replication to the second; and issue was then joined on said replication.

On the trial, as the bill of exceptions states, the plaintiff offered in evidence the note sued on, with the endorsement thereof; to the introduction of which evidence the defendant objected, "as not showing any cause of action authorizing a suit in the name of the present plaintiff, and because there was no proof of the signatures of those who purported to be the makers." The court overruled both of these objections, and the defendant excepted.

"There was proof, tending to show that all the parties to said note, about the date thereof, resided in Columbus, Georgia. The plaintiff offered in evidence the following acts of the State of Georgia, extracted from Cobb's Digest, pp. 519, 594:

'*Section* XXV. All bonds, and other specialties, and promissory notes, and other liquidated demands, bearing date since the 9th day of June, 1791, whether for money or other thing, shall be -of equal dignity, and negotiable by endorsement, in such manner, and under such restrictions, as are prescribed in the case of promissory notes. *Provided*, that nothing herein contained shall prevent the party *from* (?) giving any bond, note, or other writing, from restraining the negotiability thereof, by expressing in the body thereof such intention.'

'*An act* to define the liability of endorsers of promissory notes and other instruments, and to place them upon the same footing with securities. Approved Dec. 21, 1826.

\* \* \* 'From and after the passage of this act, that the parties heretofore required of making a demand of the makers of promissory notes and other instruments for the payment and performance of the same, and their giving notice of such demand within a reasonable time to the endorsers of said promissory notes and other instruments, shall cease and become entirely unnecessary to bind said endorsers; and whenever any person whatsoever endorses a promissory note, or other instrument, he shall be held, taken and considered as security to the same, and be in all respects bound as security, until said promissory note,

or other instrument is paid off and discharged, and shall be liable to be sued, in the same manner, and in the same action, with the principal, or maker of said promissory note or other instrument; any law, practice, or usage to the contrary, notwithstanding. *Provided,* always, that nothing herein contained shall extend to any promissory note, which shall be given for the purpose of negotiation, or intended to be negotiated, at any chartered bank, or which may be deposited in any chartered bank for collection. *Provided,* also, that nothing contained in this act shall be construed as to prevent the endorser from defining his liability in the endorsement.

'*Section* 11. Any security, or endorser, may, whenever he thinks proper, after the note or instrument becomes due, require the holder to proceed to collect the same; and if he shall not proceed to do so, within three months, the endorser or security shall be no longer liable.'

"The interest of the State of Georgia was also proved. This was all the evidence submitted on the question of indebtedness, and in support of the declaration; and thereupon the court charged the jury, in relation to the point of indebtedness, that if they believed all the evidence, the plaintiff was entitled to sue in his own name, and was entitled to recover in this action; to which charge the defendant excepted."

The rulings of the court on the pleadings, and the charge to the jury, are now assigned as error.

Geo. D. Hooper, for the appellant.

L. E. Parsons, and John White, *contra.*

WALKER, J.— The declaration contains no averment of a demand of the makers of the note, and notice to the endorser, nor of any excuse for the omission of such demand and notice. Therefore, the declaration does not show a liability upon the endorsement, if tested by the common law.—Mims v. Central Bank of Ga., 2 Ala. 295. On the other hand, there is no averment of facts showing a compliance with the Alabama statute, which requires a prosecution of the maker to a return of *nulla bona.* There

is, therefore, no cause of action found in the declaration, when tested by the Alabama law. If then the declaration be good, it must be made so by the pleading of the Georgia law. It is indispensable to the maintenance of the declaration, that the averment of the Georgia law should show that the facts set forth impose a legal liability upon the defendant, according to that law. The declaration does not state what the law of Georgia is, or was; but states a conclusion as to the effect of the law, and as to the rights and liabilities of the parties under the law. The mode of pleading here is not distinguishable from that in the case of Cockrell and Wife v. Gurley, 26 Ala. 405; and we refer to that decision, as a conclusive authority upon the point.—See, also, Alday v. Jameson, 3 Porter, 112. The demurrer to the declaration ought to have been sustained, and the court erred in overruling it.

The third plea sets up matters occurring after the commencement of the suit; and they should, therefore, have been pleaded to the further maintenance of the suit, or *puis darrein continuance*, according as they occurred before or after issue joined, or plea pleaded.—Sadler v. Fisher, 3 Ala. 200; Burns v. Hindman, 7 Ala. 531; 1 Chitty on Pleading, 657, 658; Yeaton v. Lynn, 5 Peters, 224; Covell v. Weston, 20 John. 414. For this reason, if no other, the demurrer to this plea was properly sustained.

This plea was evidently drawn up in haste, and several questions as to its sufficiency in its present form occur to us, which, when it has been carefully reconstructed, may not again arise, We therefore consider the question of law which alone has been argued by the counsel, and which we suppose was intended to be raised by the plea and demurrer, without examining all the questions suggested by the plea in its present imperfect form.

We think the following proposition maintainable: If the estate was regularly declared insolvent; and, within six months thereafter, the creditor filed his claim in the probate court; and within nine months the administrator, or some creditor in his name, filed in the probate court written objections to the claim according to the provisions of the statute; and thereupon an issue was made up, and

tried, between the creditor as plaintiff and the administrator as defendant, upon which the parties appeared; and the court thereupon rejected the claim, and made a decree disallowing it according to the statute,—that judgment would be conclusive upon the plaintiff, notwithstanding a suit upon the claim was pending in the circuit court at the time of the decree of insolvency.

Under the statute, (Clay's Digest, 194, §§ 10, 11, 12,) it is clear that the mere report and declaration of insolvency would not affect the pending suit, further than to prevent the issue of execution. But the question here is not as to the effect of the report and decree of insolvency, but of a decree upon the merits, rejecting the claim, after the plaintiff has filed it in the probate court, and it has been there contested and tried upon an issue to which the plaintiff was a party, in the manner pointed out in the statute.—See section 13, *supra*. The circuit court having first obtained jurisdiction of the cause, the plaintiff, by interposing in a proper manner the pendency of suit in that court, might have defeated the proceedings to test his claim in the probate court. But the probate court unquestionably had jurisdiction of the subject-matter. The plaintiff had the right to file his claim in that court, and prosecute it to a judgment if he could. If, in a court of competent jurisdiction, he has proceeded to prosecute his claim to a final decision on the merits, without interposing the prior pendency of the other suit, he must be bound by the judgment; otherwise, he might make the proceedings in the probate court a mere experiment. Under a different decision, the conclusiveness of the judgments of courts having jurisdiction over the subject-matter and the parties, would not be vindicated.

Upon this question, the case of Dorman v. Ogburn cannot avail the appellee. In that case, a guardian, appointed by the orphans' court of Chambers county, was removed, because a subsequent guardian had been appointed by the orphans' court of Montgomery county. The court, *arguendo*, says: "If a particular orphans' court, having jurisdiction of an orphan and of his estate, appoint a guardian of them both, that court has the exclusive juris-

McDougald's Adm'r v. Rutherford.

diction afterwards, and there is no authority for such orphans' court either to remove such guardian, or to supersede him by another appointment." We understand the court to mean nothing more, than that the jurisdiction over a guardianship, having rightfully attached, is exclusive, and cannot be divested by another court assuming the same jurisdiction. The inapplicability of that principle to this case results from the fact, that the probate court and circuit court have concurrent jurisdiction, and the plaintiff had therefore a right to defeat the subsequent proceedings of the orphans' court, on the ground that the jurisdiction of the circuit court had already attached; but, failing to avail himself of this right, he cannot treat the proceedings as a nullity.

The fifth plea was good, because, as already decided, there was no cause of action, unless the Georgia law was such as it is represented in the declaration, in the form of a conclusion by the pleader. The demurrer was therefore improperly sustained to the fifth plea.

The court did not err in admitting the note and endorsement in evidence, without proof of their execution. Our statute (Clay's Digest, 340, § 152) has been construed to dispense with proof of the execution of instruments, made in another State, where *non est factum* is not pleaded. Miller & Cobb v. McIntyre, 9 Ala. 638; Dew v. Garner, 7 Porter, 503.

The charge of the court, that if the jury believed the evidence, they must find for the plaintiff, was erroneous. The pleadings and proof showed no effort to collect out of the makers of the note, no demand, no notice, and no excuse for the omission in those respects; and consequently, if the plaintiff was entitled to a verdict, it was by aid of the Georgia statutes in proof. Those statutes were not available to him, and were indeed irrelevant evidence, unless the contract was proved to have been made in Georgia, or with a view to its performance in that State. It is by the *lex loci contractus*, and not the *lex domicilii*, that the contract is to be interpreted, and its obligations measured.—Miller & Cobb v. McIntyre, 9 Ala. 638; Dunn v. Adams, Parmeter & Co., 1 Ala. 527; Story

on Conflict of Laws, §§ 242, 280, 281, 282; Hanrick v. Andrews, 9 Porter, 9. Therefore, if it had been proved that the parties to the contract resided in Georgia at the time it was made, the applicability of the laws of that State would not have resulted. In this case, the proof not only did not show that the contract was made in Georgia, but it did not even establish the fact of their residence in that State at the time. The bill of exceptions simply says, that there was proof *tending to show* that the parties resided in Georgia. If a residence in Georgia had been, of itself, sufficient to authorize a verdict for the plaintiff, it would have been improper for the court to have assumed, as it did by the charge given upon the evidence, a fact as proved, when there was only a *tendency* of the proof to establish it.—Lawler v. Norris, 28 Ala. 675; Stanley v. Nelson, *ib.* 514; King v. Pope, *ib.* 602; McKenzie v. Bank, *ib.* 606; Foust v. Yielding, *ib.* 658.

If the plaintiff can recover at all in this case, it is manifest that it must be upon the Georgia statute, which makes the endorser stand in the place of a security upon the note, and therefore liable as a maker. This peculiar liability cannot be visited on the endorser, unless the endorsement was made in the State from the law of which it is deduced; because the endorsement is a separate and independent contract, the liabilities growing out of which are to be ascertained and measured by the law of the place where it was made.—Givens & Herndon v. Western Bank of Georgia, 2 Ala. 397; Cox v. Adams, 2 Georgia, 158; Story on Promissory Notes, § 155; Story on Conflict of Laws, §§ 267, 314. It is therefore indispensable to the maintenance of the action, that the endorsement should be proved to have been made in Georgia; and, in the absence of such proof, a charge that, if the jury believe the evidence, they must find for the plaintiff, is improper.

Should it appear, upon a future trial of the case, that the note and endorsement were made in Georgia, but that the transfer by delivery from the payee to the endorser was made in Alabama, by the laws of which State a transfer by delivery cannot vest the assignee with the legal title to the note, the question would then arise,

whether an endorsee who held the note upon such a transfer would be within the statute of Georgia, which imposes the peculiar liability upon endorsers. We have examined this question; but, as it is one of some difficulty, and entirely new in this court, and may not arise, we forbear to express any opinion upon it, but subjoin a list of the authorities pertaining to the question, which our investigations have discovered.—Story on Promissory Notes, §§ 155, 120, 133, 459; Trimby v. Vignier, 1 Bing. N. C. 151, (27 E. C. L. 336); De la Chaumette v. Bank of England, 9 Barn. & Cress. 208, (17 E. C. L. 356); S. C. 2 Barn. & Adolph. 385, (22 E. C. L. 106); Story on Conflict of Laws, §§ 354–6; Cox v. Adams, 2 Georgia, 158; 3 Ala. 610; *ib.* 648; *ib.* 633; 6 *ib.* 746; 9 *ib.* 216; *ib.* 159; 15 *ib.* 385.

For the errors indicated in the foregoing opinion, the judgment of the court below is reversed, and the cause remanded.