Sharp and Wife v. Burns & Coles.

---

## SHARP AND WIFE *vs.* BURNS & COLES.

[ACTION AGAINST HUSBAND AND WIFE, FOR GOODS SOLD AND DELIVERED.]

1. *Sufficiency of complaint, in description of account.*—In an action against husband and wife, seeking to charge the wife's statutory separate estate for " articles of comfort and support of the household," (Code, § 1987,) it is not necessary to specify in the complaint the several items of which the account is composed.

2. *Relevancy of evidence to prove account.*—In such action, the fact that the husband and wife, during the time covered by the account sued on, " did most of their trading with plaintiffs," is relevant and admissible evidence for the plaintiffs.

3. *What constitutes wife's statutory separate estate.*—A distributive share of an unsettled estate, to which the wife was entitled prior to the passage of the " woman's law" of 1848, but which did not come to her possession until .after her marriage in the spring of 1853, constitutes a part of her statutory separate estate.

4. *Charge requiring explanation, but not asserting erroneous legal proposition.*—A charge to the jury, instructing them that, if the husband or wife contracted with plaintiff the accounts sued on, " and said accounts were for articles of comfort and support of the household, suitable to the degree and condition in life of the family, and for which the husband would be responsible at common law, and the wife owned a statutory separate estate at the time the articles in the accounts were furnished, *then her separate estate would be liable for the payment of said accounts,"*—though ambiguous, or calculated to mislead the jury, in authorizing them to infer that they might find for the plaintiffs although the wife's separate estate was not owned by her at the commencement of the suit, is not erroneous : its effect might have been qualified by asking an explanatory charge. (STONE, J., *dissenting.*)

5. *Liability of wife's statutory separate estate for articles of comfort and support of the household.*—The liability of the wife's statutory separate estate, for " articles of comfort and support of the household," (Code, § 1987,) is not affected by the fact that the husband, at the time the articles were furnished, owned property sufficient to pay for them ; nor by the fact that the price of the articles exceeds the annual income of the wife's separate estate; nor by the fact that the husband was recognized as the debtor, and afterwards gave a mortgage to secure the debt.

6. *Form and sufficiency of verdict.*—In a verdict for the plaintiffs in this action, it is not necessary that the items of the account for which the wife's separate estate is found liable should be specified.

7. *Form of judgment.*—The judgment in this case held sufficient, and in proper form, on the authority of *Ravisies v. Stoddart & Co.*, 32 Ala. 599.

8. *Question of practice not revisable on error.*—The action of the circuit court, in requiring the appellant's counsel, during the trial, to deliver to the opposite counsel a paper which is legal evidence in the cause, cannot be revised on error or appeal.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THIS action was brought by the appellees, as partners, against Benjamin T. Sharp and Maria, his wife ; and was commenced on the 15th October, 1857. The complaint, as amended, contained three counts, which were in the following words :

" The plaintiffs claim of the defendants $2,000, due by account on the 1st January, 1857, for merchandise, goods

Sharp and Wife v. Burns & Coles.

and chattels, sold and furnished, and money loaned and furnished, by plaintiffs to defendants, prior to that time; and plaintiffs aver, that said Maria Sharp has a separate estate, held under the provisions of the Code of Alabama; and that said account was contracted for articles of comfort and support of the household, suitable to the degree and condition of the family, and, with interest thereon, is now due and unpaid.

"And the plaintiffs claim of the defendants $2,000, for this : that the said plaintiffs, heretofore, on the 1st January, 1855, sold and delivered to the defendant B. T. Sharp, at his special instance and request, divers goods, wares and merchandise, to the value of $27 87; and on the 1st January, 1856, sold and delivered to said B. T. Sharp goods, wares and merchandise, to the value of $618; and on the 1st January, 1857, sold and delivered to the said B. T. Sharp goods, wares and merchandise, to the value of $1,795; and the said defendants were then living together in lawful wedlock, in the State of Alabama, and had a family and servants, constituting their household; and the said goods, wares and merchandise were articles of comfort and support of the said household, suitable to the degree and condition in life of the said family, and for which the said husband, B. T. Sharp, would be responsible at common law. And the plaintiffs aver, that at the time of the sale and delivery of the said goods to the said B. T. Sharp, and at the time this suit was brought, the said defendant Maria Sharp had certain negro slaves in her possession—to-wit, a negro man named Cato, of the value of $1,000; a negro man named Ephraim, of the value of $1,000; a negro woman named Polly, of the value of $1,000; and a negro woman named Milly, of the value of $1,000—and said Maria Sharp was, at the dates aforesaid, and still is, the owner of said slaves, and owned and possessed them as her separate estate under the provisions of the Code of Alabama, sections 1987 and 1988, article 3, title 5, of part 2d, and the said Maria Sharp has received the said slaves since the 1st day of March, 1848. And the plaintiffs aver, that said sum of

money is justly due and unpaid; and they claim the same, with interest thereon.

"And the plaintiffs claim of the defendants $2,000, for this: that the said plaintiffs, heretofore, on the — day of —, 1857, sold and delivered to the said defendants, at their special instance and request, divers goods, wares and merchandise, to the value of $2,000; and the said defendants were then living together in lawful wedlock, in the State of Alabama, and had a family and servants, constituting their household; and the said goods, wares and merchandise, were articles of comfort and support of the said household, suitable to the degree and condition in life of the said family, and for which the said husband, B. T. Sharp, would be responsible at common law. And the plaintiffs aver, that at the time of the sale and delivery of the said goods, wares and merchandise to the said defendants, the said defendant Maria Sharp had certain negro slaves in her possession—to-wit," &c., (specifying the names and value of the slaves, as in the second count;) "the said Maria Sharp being the owner of said slaves at the dates aforesaid, when said articles were sold and delivered to the said defendants, and being still the owner of said slaves; and owning and possessing the same at the several periods of time aforesaid, and also at the time this suit was commenced, as her separate estate under the provisions of the Code of Alabama, as defined in sections 1987 and 1988; and having received the said slaves since the 1st day of March, 1848. And the plaintiffs aver, that said sum of money is justly due and unpaid; and they claim the same, with interest thereon."

The defendants demurred to each count of the complaint, "in short by consent," and specified the following causes of demurrer: "1st, the complaint does not aver that the articles furnished were 'of comfort and support to the household'; 2d, it does not aver that the articles furnished were 'suitable to the degree and condition in life of the family'; 3d, it does not aver that they were articles 'for which the husband would be responsible at common law'; 4th, it does not aver under which statute the wife's separate estate is claimed; 5th, it does not aver

and set forth the particular separate estate owned by the wife at the time of the contract ; 6th, it does not aver that the separate estate described existed at the commencement of the suit ; 7th, it does not set out each item of the account sued on, so that the defendants might demur for a misjoinder of defendants ; and, 8th, because it is *in personam*, and not *in rem*." The court sustained the demurrer to the 1st count, and overruled it as to the 2d and 3d; and the defendants then pleaded, jointly and separately, *non assumpsit*, and Mrs. Sharp also pleaded that the slaves specified in the complaint belonged to her husband, and not to herself.

" On the trial," as the bill of exceptions states, " it was proved, that Mrs. Maria Sharp was the daughter of Daniel Kirkland, deceased, who died in Autauga county, in 1842, intestate ; that said Kirkland's estate was distributed in December, 1853 ; that Mrs. Sharp received, on the distribution of said estate, as her distributive share, the following slaves, viz., Cato, then worth $750, Polly, worth $700, Martha, now dead, Ephraim, worth $1,000, Milly and child, worth $1,000, Circta, a girl worth $300, and Martin, worth $200 ; that said slaves, except the one now dead as above stated, have been in the possession of Mrs. Sharp ever since she so received them, and are still in her possession ; and that they are worth more now than when she received them. The value of said slaves at the time of the trial was also proved. It was further shown, that the defendants were married in the spring of 1853 ; that the said Maria was never before married ; that at the time of said marriage, and for three years afterwards, the said B. T. Sharp had ten or twelve negroes of his own in his possession ; that the value of Mrs. Sharp's interest in her father's real estate, in 1853, was $844 50, and in negroes $4,512 50 ; that said Sharp and wife kept house soon after their marriage, and continued to keep house as long as they lived together in 1857 ; that they had a child, which is still living ; that they kept servants about their house and kitchen, and lived in as good style as people of their property ordinarily did, and were people of common intelligence and education. The evidence tended to show,

also, that Sharp and wife, during the years 1854, 1855, and 1856, contracted large store-accounts with the plaintiffs; that plaintiffs' clerk presented said accounts to said B. T. Sharp, who did not dispute them, but gave his note for them; and that when said note was presented to Mrs. Sharp for her signature, she refused to sign it, and did not acknowledge said accounts. Said accounts, as presented, amounted to $1,928 80, and were as follows," &c.

" The evidence tended to show, also, that plaintiffs' clerk, by their direction, had drawn off an account of those items of the above accounts with which they thought Mrs. Sharp was chargeable, amounting to about $1,000, and presented the same to her; that she kept the same for examination, and, when afterwards asked whether it was correct, said, that it was except in a few small items. These things were proved by plaintiffs' book-keeper, who stated, that all he knew about the correctness of the accounts was from finding them on plaintiffs' books, and from the admissions of the parties as above stated; that he did not know, of his own knowledge, that the goods were sold or delivered, as he did not see them sold or delivered. Said witness also stated, against the objection of the defendants, that Sharp and wife, during the years 1854, 1855, and 1856, did most of their trading with plaintiffs; and to the ruling of the court in allowing this evidence to go to the jury the defendants excepted.

" The defendants' counsel here presented an account to the witness, and asked him in whose handwriting it was, and what he knew about it. The witness stated, that it was in his handwriting, and was the one which he had drawn off from plaintiffs' books. After making this proof, the defendants' counsel retained the account, and did not offer to read it in evidence; but afterwards handed said account, for cross-examination, to plaintiffs' attorneys, who handed it back to them. In answer to questions from plaintiffs' counsel, the witness stated, that said account was, he thought, the one which he had presented to Mrs. Sharp, and which she had kept for examination, and said was correct, as above stated. Thereupon, plaintiffs' counsel asked defendants' counsel for said account;

but the latter refused to let them have it, and claimed that, as a private paper, plaintiffs' counsel had no right to it. The court required the defendants' counsel to deliver up said account to plaintiffs' counsel; to which ruling of the court the defendants excepted. The plaintiffs then read said account to the jury, against the defendants' objection; to which, also, the defendants excepted.

" The degree and condition in life of the [defendants'] family was proved. There was proof by the witness Cole, who was an experienced merchant, tending to show that the articles specified in said last account were articles of comfort and support, usually enjoyed and used by such a family, and suitable for such a family. The defendants read to the jury, after proving its execution, the following deed of mortgage." (This mortgage, dated the 25th March, 1857, was executed by the defendant B. T. Sharp, conveyed to the plaintiffs nine negroes and a tract of land, was intended to secure the payment of certain debts owing by said Sharp to them, including the accounts here sued on, and authorized the mortgagees to sell the property if the debts were not paid by the 1st February, 1858.) " The evidence tended to show, that this mortgage was given to secure the accounts here sued on, and that the property conveyed by it was worth from five to eight thousand dollars. There was evidence tending to show, that the mortgaged property had all been sold, and the proceeds appropriated to the payment of debts of said B. T. Sharp having prior liens to plaintiffs' debt; and that plaintiffs could not realize anything from it towards the payment of the debts here sued on. The accounts sued on were charged on plaintiffs' books to Sharp and wife."

" The court charged the jury, that if they believed from the evidence that the defendants were married in the spring of 1853; and that Mrs. Sharp, in December, 1853, after her marriage, came into the possession of property from the estate of her father, Daniel Kirkland, deceased, who died in 1842, intestate,—then the property so acquired by her would constitute her separate estate in law; and that if they believed either Mr. or Mrs. Sharp contracted

accounts with plaintiffs during the years 1854, 1855, and 1856, and that said accounts were for articles of comfort and support of the household, suitable to the degree and condition in life of the family, and for which the husband would be responsible at common law, and that Mrs. Sharp owned this separate estate at the time the articles in the accounts were purchased, then her separate estate would be liable for the payment of said accounts."

The defendants excepted to this charge, and then asked the following charges:

"1. That if the jury believed from the evidence that B. T. Sharp himself owned property sufficient to pay these accounts, then the separate estate of the wife is not liable.

"2. That whenever the claim sued on exceeds the annual income of the wife's separate estate, it is *prima-facie* evidence that the articles furnished were not suitable to her estate and condition in life; and that the plaintiffs cannot recover, unless they have proved that the accounts sued on, in any one year, were *not* (?) exceeded by the annual income of the wife's separate estate.

"3. That if the plaintiffs recognized the claim sued on as the debt of B. T. Sharp, as evidenced by the mortgage in evidence, then the separate estate of Mrs. Sharp is not liable to pay it.

"4. That if the mortgage of B. T. Sharp embraced the claim sued on, and conveyed to the plaintiffs property enough to have paid all the debts named in it; and the plaintiffs have not accounted for said property, nor shown what has become of it,—then the plaintiffs cannot recover of B. T. Sharp in this action, nor subject Mrs. Sharp's separate estate to its payment.

"5. That if Mrs. Sharp's father died in 1842, intestate, and the property named in the complaint came to her from his estate,—upon her marriage with B. T. Sharp, it became absolutely his, on reducing it to possession, and is not liable to condemnation as her separate estate, and no judgment can be rendered against her in this action.

"6. That if they find for the plaintiffs, they must return

in their verdict the items of the account for which they find the wife's separate estate liable."

The court refused each one of these charges, and to the refusal of each the defendants excepted.

The judgment is in the following words: "Came the parties," &c., "and thereupon came also a jury," &c., "who, upon their oaths, do say, 'We, the jury, find the issues in favor of the plaintiffs, and assess their debt and interest at the sum of $1,281 19; and we find the following separate estate to belong to the said Maria Sharp, to-wit, slaves Cato, Ephraim, Polly, and Milly.' It is therefore considered by the court, that the plaintiffs recover of the defendant B. T. Sharp the said sum of $1,281 19, so assessed by the jury, with the costs in this behalf expended; and it is further ordered and considered by the court, that the said slaves, Cato, Ephraim, Polly and Milly, which belong to the separate estate of Mrs. Maria Sharp, are subject and liable for the payment of said sum of $1,281 19 and the costs of this suit; and if said debt, costs and interest, are not paid by the said B. T. Sharp, then it is further ordered by the court, that an order issue directing the sheriff to sell said slaves, or so many as may be necessary to pay said debt, costs and interest; and it is further ordered by the court, that satisfaction of one of these judgments shall be a satisfaction of both."

The overruling of the demurrer to the second and third counts of the complaint, the several rulings of the court on the evidence, the affirmative charge given, the refusal of the several charges asked, and the judgment rendered, are now assigned as error.

GEO. W. GAYLE, for appellants.
BYRD & MORGAN, contra.

A. J. WALKER, C. J.—The second and third counts of the complaint are not defective in the particulars mentioned in the first, second, third, fourth, fifth, sixth, and eighth assignments of demurrer. The objection made in the seventh assignment of demurrer is not valid. It was not necessary, at common law, in a suit upon an account,

to specify the several articles of goods, wares and mer-
chandise charged; nor is there any reason why it should
be required in a proceeding under section 1987 of the
Code.—2 Chitty on Pleading, 55–56. There was no error
in overruling the demurrer to the second and third counts
of the complaint.

[2.] The evidence that the defendants did most of their
trading with the plaintiffs, was admissible. The fact that
the defendants chiefly procured their supplies from the
plaintiffs, perhaps contributed something to the argument,
that the comfort and support of the household was not
otherwise provided for, and that those articles sold by the
plaintiffs were really for the comfort and support of the
household, and such as the husband would be responsible
for at common law.

[3.] The first proposition of the charge given by the
court is, that a woman, who married after the Code went
into operation in 1853, and who was then entitled to a
distributive share in the estate of one who died in 1842,
had a separate estate in property received after her mar-
riage as her distributive share in such estate. This prop-
osition is unquestionably correct; for section 1982 of the
Code expressly enacts, that property of the wife, held by
her previous to the marriage, is her separate estate; and
the interest of a distributee of an estate is property.
Hardy v. Boaz, 29 Ala. 168. Where the marriage occurred
after the enactment of the law providing separate estates
for married women, property which she held at the time of
the marriage, no matter when acquired, is her separate
estate. It was remarked in Hardy v. Boaz, (*supra*,) that
the acts of 1848 and 1850, concerning separate estates,
had "no retroactive effect upon estates which had accrued
to, and vested in the *wife*, but operate only as to the prop-
erty or interests which accrued to, and were acquired *by
the wife* after their passage." This remark has relation
only to cases where the marriage occurred before the
adoption of the statutes, and was simply designed to assert
that they did not retroact upon property which accrued
under pre-existing marriages. Allowing those statutes
to operate upon property held by a woman before their

adoption, does not give them a retroactive operation, if the marriage occurred after their adoption.—Kidd v. Montague, 19 Ala. 619; Manning v. Manning, 24 Ala. 386.

[4.] The latter part of the charge, assuming the marriage of the defendants, sums up as the requisites to make the *feme covert's* separate estate liable to the payment of the accounts, the following—that the accounts were contracted by the husband or wife, in 1854, 1855, and 1856; that they were for articles of comfort and support of the household, suitable to the degree and condition of the family, for which the husband would be responsible at common law, and that the wife owned the separate estate at the time the articles were purchased.  The marriage of the defendants was evidently an established and undisputed fact in the case; and the court was, therefore, authorized to assume its existence in giving instructions to the jury.—Kirkland v. Oates, 25 Ala. 465; Nelms v. Williams, 18 Ala. 650; McDougald v. Rutherford, 30 Ala. 253.  This summary of the facts necessary to render a wife's statutory separate estate liable, is in strict conformity to the law, as expounded in the decisions of this court.—Durden and Wife v. McWilliams, 31 Ala. 438; Ravisies v. Stoddart, 32 *ib.* 599. If the charge had predicated the plaintiffs' right of recovery upon the facts stated, it would have been incorrect, because it does not include among those facts that of the ownership of the property at the commencement of the suit.  It simply deduces the liability of the separate estate from those facts, but does not assert that, upon those facts, this particular action could be maintained.  The charge covers the question of the liability of the separate estate to be subjected by action to the payment of the accounts—not the question of its liability to an action brought at the time when this suit was commenced.  If the charge was ambiguous, or tended to mislead the jury, without asserting an erroneous proposition of law, the defendants should have protected themselves, by asking an explanation.—Taylor v. Kelly, 31 Ala. 59; Skinner v. State, 30 Ala. 524.

[5.] The defendants were not entitled to have any one of

the six charges asked by them given. The right to subject the wife's separate estate to payment for the articles described in section 1987 of the Code, is not affected by the solvency and ability of the husband to pay, nor by the fact that the husband has been recognized as a debtor, or has given a mortgage to secure the payment. Whenever the combination of circumstances described in section 1987 exists, the wife's separate estate is liable. The husband is undoubtedly also liable *personaliter;* and the fact that securities have been taken to make his liability effectual, could no more relieve the wife's separate estate from the charge upon it, than would the taking of similar steps in other cases where a creditor has distinct remedies. That an account exceeded the income of the separate estate, is not, *per se,* a legal reason for an exemption of the separate estate from the charge. The 5th charge requested is at variance with the doctrine, which we have announced in reviewing the first proposition of the charge given.

[5.] We can perceive no reason for requiring, as the sixth charge proposes, a specification in the verdict of the items of the account.

[7.] The judgment entry seems to be in substantial conformity to that prescribed in Ravisies v. Stoddart, *supra.* If there be any defect in it, it is not pointed out in the argument of counsel, and has escaped our attention.

[8.] It is a practice uniformly pursued in this court, to refuse a reversal for anything in the conduct of the court below which could not have exerted any influence prejudicial to the appellant upon the trial. The account which the court compelled the appellants' counsel to deliver to the opposite counsel, that he might introduce it in evidence, was certainly admissible and competent testimony, in the connection in which it was offered. The effect of the conduct of the court was simply to procure the reading of legal evidence. If the court transcended its powers, (which we do not mean to assert,) no prejudice to the appellants, so far as the cause is concerned, has resulted. As well might it be said, that there is a reversible error, when some means of fraud or deception have been used

to procure the attendance of a witness whose testimony is legal. Upon an appeal from a judgment in a cause, there can be no inquiry into the agencies resorted to for the procurement of the possession of documentary evidence, which is admissible.

The judgment of the court below is affirmed.

STONE, J., dissents from the opinion of the majority on the charge given.