BOWEN, SURV. PART. *vs,* BLOUNT ET AL.

[BILL IN EQUITY TO SUBJECT SEPARATE STATUTORY ESTATE OF MARRIED WOMEN TO PAYMENT OF NOTES SIGNED BY HER AND HER HUSBAND FOR FURNITURE USED BY HER, &c,]

1. *Statutory separate estate; what creates,*—Where the wife with her own moneys purchased a tract of land, in this State, on the 5th day of January, 1852, and the deed is made to her "to have and to hold the above granted and described premises and appurtenances unto her, her heirs and assigns for ever, to and for their and their only proper use, benefit and behoof for ever," this creates in her a separate estate, to be held under the Code of Alabama and the Revised Code of Alabama.

2. *Same; for what debt can not be subjected.*—The land thus held can not be sold under a decree on bill in equity for the payment of a promissory note given by the wife and her husband jointly, made by them since 1852, whether the debt so made is her debt or the debt of her husband, unless, perhaps, it was for "articles for the support and comfort of the household," under section 2376 of the Revised Code.

APPEAL from the Chancery Court of Mobile.
Tried before Hon. ADAM C. FELDER.

The opinion states the case.

D. P. BESTOR, for appellant.
J. LITTLE SMITH, *contra.*

[No briefs reached Reporter.]

PETERS, J.—This is a suit in equity, commenced by the appellant, Bowen, surviving partner of the firm of J. Bowen & Gilman, as complainant in the court below, against Frederick S. Blount and his wife, Emily J. Blount, as defendants, for the purpose of subjecting Mrs. Blount's separate estate to the payment of two certain promissory notes, each for one hundred and twenty dollars, executed by her said husband and herself, on the 27th day of November, 1857. Mrs. Blount died during the progress of the

cause in the court below, and the suit was revived in the name of her heirs and devisees. At the hearing, the bill was dismissed at the cost of Bowen in the court below, who brings the case here by appeal.

The essential facts of the case may be stated as follows: On January 5, 1852, Mrs. Blount, then the wife of said Frederick S. Blount, purchased from Robert D. James, as the executor of the last will and testament of Isaac H. Irwin, deceased, certain real property lying in the city and county of Mobile, in this State, which is particularly described in the bill. In the deed of the vendor, Mrs. Blount is mentioned as "the party of the second part," and the conveyance is to her: "To have and to hold the above granted and described premises and appurtenances unto the said party of the second part, her heirs and assigns for ever, to and for their and their only proper use, benefit and behoof forever." Mrs. Blount took possession of the lands thus sold to her, and held the same, as her separate estate. And afterwards, on the 27th day of November, 1857, she joined her said husband, said Frederick S. Blount, in the execution of two promissory notes, as above said, and jointly and severally with her said husband promised to pay said firm of J. Bowen & Gilman the sums of money named in said notes, on a day before the commencement of this suit. It is also alleged that said Frederick S. Blount is insolvent, and that the consideration of said notes "was for furniture and other merchandise bought of and from said firm of J. Bowen & Gilman by the said Emily J. Blount; said furniture and merchandise having been used in the dwelling-house of the said Frederick S. Blount and the said Emily J., his wife, and for their joint benefit." Gilman died, and the bill is filed by Bowen, as the surviving partner of the said firm of J. Bowen & Gilman.

Mrs. Blount and her husband both answer the bill, and demur for want of equity. She also sets up her right to the real estate mentioned in the bill as her separate estate, under the act of the Legislature of this State "of 1849–1850, No. 23, Pamphlet Laws 1849–50, page 63, and the

Code of Alabama;" and she insists and avers, that it is "governed by their restrictions and provisions." She also denies that she is liable on the notes set out in complainants' bill, or that she received any consideration for the same. After the cause was at issue, some testimony was taken by the complainant which tended to show, that the consideration of the notes in suit was, in part at least, the price of a rose-wood piano and piano-stool purchased in 1853 on credit, and that the credit was given to Mrs. Blount and not to her husband, who was then insolvent.

Where a bill shows upon its face a want of equity, the chancellor may dismiss it at the hearing without a demurrer or a motion for that purpose.—(11 Ala. 943, 3 Stew. 9.) Here it| is quite certain that it is the sole purpose of the suit to reach the separate estate of Mrs. Blount to enforce the payment of her own or husband's debt, contracted since the Code of Alabama went into operation. It is also equally beyond rational controversy, that her property mentioned in the bill is held by her under the restrictions and provisions of the act of the General Assembly of this State, entitled "An act to alter and amend an act *securing* to married women their separate estates, and for other purposes," approved on February 13, 1850.—(Pamph. Acts 1849–50, p. 63.) This is the same law, so far as it goes, which has been incorporated into the Code and the Revised Code of this State.—(Code of Ala. § 1982, 1993 ; Rev. Code, § 2371, 2382.) Such an estate is governed and limited by the law of the Code, and is the statutory separate estate of the wife ; which neither she nor her husband can charge with his or her debts, except in the manner and for the purposes prescribed by the statute.—(*Warfield v. Ravesies and Wife*, 38 Ala. 518 ; *Bibb v. Pope*, 43 Ala. 190 ; *Wilkinson v. Cheatham*, 45 Ala. 337, Head-notes Jan. term, 1871, p. 12 ; Rev. Code, § 2371, 2382, *supra* ; 35 Ala. 653 ; 30 Ala. 335.

The discussion of this important statute is so full in the above cited cases, that it would be a needless labor to repeat the argument here, notwithstanding the very able and

elaborate briefs of the learned and diligent counsel for the appellant in this court. The language of the Code and the Revised Code is the same in defining the wife's title to her property. It is this: "*All* property *of the wife, held* by her previous to the marriage or which she may become entitled to after the marriage, *in any manner*, is the *separate* estate of the wife, and is not subject to the payment of the debts of the husband."—(Code of Ala. § 1982; Rev. Code, § 2371.) And a subsequent section of the Code brings under the operation of this statute the *separate* estate of all married women in this State, acquired since the first day of March, 1848, from and after the time the Code went into operation.—(Code of Ala. § 1993; Rev. Code, § 2382.) It is further declared by the same law, that—"The provisions of this article take effect and are operative on the *estates* of all married women, who have been married or have received property by descent, gift or *otherwise, since* the first of March, one thousand eight hundred and forty-eight;" which was the date of the first amendatory statute on the subject of "the protection of the rights of married women" in this State.—(Code of Ala. § 1997; Rev. Code, § 2388.) The Code of Alabama went into operation on the 17th day of January, 1853.—(Pamph. Acts 1853–1854, Act No. 88, p. 71, § 2.); and it brought under its protection the estate of Mrs. Blount, whether that estate by the deed of purchase, was a separate estate or not. After the adoption and promulgation of the Code as an operative law, its effect was to render the words in a conveyance of property to a married woman, which had been before that time used to limit the property conveyed to her for her separate use, unnecessary. Such words are now mere surplusage. The law intervenes and controls and defines the conveyance, if made to her. The contract of conveyance may limit the extent of her estate, but it can not defeat or impair her rights under the statute. In whatever mode the conveyance may be made the statute enters into and forms a part of it, and governs its construction. Else the contract creating the estate could be made to dominate the

statute and defeat its policy; which is not allowable. Mr. Justice Thompson says, in *Ogden v. Saunders*, (12 Whea. 213, 298,) "The contract is a law which the parties impose upon themselves, subject however to the paramount law— the law of the country where the contract is made."—(See, also, *Renner v. Bank of Columbia*, 9 Whea. 586; *The Bank of Columbia v. Oakley*, 4 Whea. 235; *Bronson v. Kenzie*, 1 How. 311, 319; *McCracken v. Hayward*, 2 How. 608, 612.) The sale in this case having been made directly to Mrs. Blount, a married woman, since the passage of the act of February 13, 1850, above referred to, (to go no farther back), was such a sale as must be governed by the law of such sales at the time this was made. This made the estate a separate estate in the wife under the statute.—(Rev. Code, § 2371, 2382, 2388.)

The law of the Code defining the separate estate of the wife and regulating her own and her husband's power over it, can not be said, in this instance, at least, to be obnoxious to that clause of the Constitution of the United States protecting the obligation of contracts. The contract of marriage is not a contract under its protection, and the notes were made long after the marital contract was modified by the law of the wife's separate estate, and, consequently, it must be controlled by it.—(*Dartmouth College v. Woodward*, 4 Whea. 518, 695, 696; 1 Bish. M. & Div. § 667, and cases *supra*.) A different construction of the law of the separate estate of the wife, it seems to me, would produce unnecessary confusion in her title to her estate. One portion might be held by deed or will to her separate use, which would take it out of the statute, and another might be held by deed or gift to her without words creating a separate estate or by descent, and this would bring it under the provisions of the statute. But if the statute effects *all* property held by the wife, at the time of the marriage, after the Code went into operation, or received by her after the marriage, and after the Code took effect, then no such confusion would happen, and the very broad expressions of the Code would have their proper and rational effect;

and the system of the wife's estate would be uniform and symmetrical; a purpose which the Legislature, no doubt, intended to effect. Besides, such a construction does not injuriously affect any contracts or any vested rights. Conceding this, there was no equity in complainants' bill, and the learned Chancellor, in the court below, did not err in dismissing it, with costs.

The decree of the court below is affirmed. The appellant, said John Bowen, will pay the costs of this appeal in this court and in the court below.