Duncan et al. v. Johnson.

EDWARD DUNCAN et al. *vs.* SARAH M. JOHNSON, by her next Friend.

It is clear, that, up to the period of distribution in 1841, the legal title to the property in controversy remained in the administrator; and although J , after his marriage with the appellee, (Sarah M. Johnson,) in 1837, resided on the plantation where the slaves were employed, it does not appear that he assumed their control or management; but if he had, the principle is well established, that that would not have had the effect to vest him with the title to the distributive share of his wife.

The chief point in controversy is, whether J. acquired an absolute right to the distributive share of his wife, or whether it inured to her as her separate property. This question has been heretofore decided by this court, in *Clarke* v. *McCreary*, 12 S. & M. 347, and is here confirmed.

The two slaves purchased in 1838 by J. with the money of the estate of Richie, belong in equity to the estate, and being so regarded by J., were embraced in the distribution; they fell to the lot of Mrs. J., and are her separate property.

THIS is a controversy between the appellee, Mrs. Sarah M. Johnson, who asserts title to the slaves named in the bill, as her distributive share of her first husband's estate, and the appellant Duncan, who claims them by virtue of a purchase at a sheriff's sale under a judgment against Peter G. Johnson, her second husband; they having been sold as his property. The slaves it seems were the property of L. B. Richie, the former husband of appellee.  He died in February, 1836, without a will, leaving the appellee and one child.

William Dean administered on the estate, at February term of the probate court of Hinds county, in 1836.  The appellee and Peter G. Johnson intermarried in December, 1837, and initiatory steps were taken for a division of the property, but nothing was done until June term of the probate court, 1841, when an order was made for that purpose.  On the 27th of July, 1841, the personal estate was divided between the appel-

Duncan et al. *v.* Johnson.

lee and her child, Mary E. Richie; report whereof was duly made to the next September term of the probate court of Hinds county, when it was confirmed.

By the division made, certain slaves were allotted to the appellee, which, with their increase, are the same slaves claimed in the bill filed. They were afterwards sold by the sheriff of Hinds county, by virtue of a judgment in favor of the Grand Gulf Bank against Peter G. Johnson; and purchased by the appellant, Duncan, or Duncan, McCallister & Co., under a previous agreement with Johnson, by which they were to be returned to him, to enable him (J.) by working them, to raise the means to pay the appellant the amount he had advanced for their purchase in the depreciated notes of the bank, and thus redeem the negroes. Duncan becoming dissatisfied with the arrangement, instituted his act of replevin in the circuit court of Hinds county to recover the negroes.

This proceeding was met by Mrs. Johnson, the appellee, by a bill filed by her next friend, John F. Watson, against said Duncan and Peter G. Johnson, praying for an injunction and for general relief, upon the ground that the slaves were her separate property. The chancellor sustained the bill, and decreed a perpetual injunction against Duncan, who takes this appeal.

*George L. Potter* and *John D. Freeman,* for appellant, Duncan.

*C. R. Clifton,* for appellee.

*D. Shelton* and *A. M. Paxton,* in reply for appellant.

Mr. Justice SMITH delivered the opinion of the court.

There is no pretence for saying that there had been a valid distribution of the estate of Leonard B. Richie, the former husband of the appellant, before that made in 1841.

It seems to be equally clear, that, before that distribution, Johnson and wife did not act upon the assumption that any distribution had been made, by asserting a right of property to

any specific portion of the decedent's estate which can be regarded as a consummation of the general right of distribution, which vested in Mrs. Johnson on the death of her former husband in 1836.  Up to the period of distribution, the legal title remained in the administrator; and, although Johnson, after his marriage with the appellee in 1837, resided on the plantation where the slaves were employed, it does not appear that he assumed their control or management.  If, however, such had been the fact, it seems to be well settled, that it would not have had the effect to vest him with the title to the distributive share of his wife.  *Elms* v. *Hughes*, 3 Ves. 155; *Baker* v. *Hall*, 12 Ves. jr. 497; *Gregory's Adm'r* v. *Mark's Adm'r*, 1 Rand. 355; *Wade* v. *Grimes*, 7 How. 425.

As we have seen, Richie died in 1836; the appellee, his widow, intermarried with Johnson in 1837, who did not reduce into possession her distributive share of the decedent's estate until 1846, after the statute of 1839, respecting the rights of married women, had gone into effect.

The principal point of controversy then is, whether Johnson, by virtue of his marriage and the distribution of 1841, acquired an absolute right to the distributive share of his wife, or whether it enured to her as her separate property.

This question, in *Clarke* v. *McCreary*, 12 S. & M. 347, was decided in favor of the wife.  We have only to repeat our unqualified approval of the decision.

Johnson in 1838 purchased two slaves (Arthur and Rachael) with money belonging to the estate of Richie.  It is alleged that they were purchased for the estate.  In equity, they belonged to it.  They were so regarded by him.  They were embraced in the distribution, and fell to the lot of Mrs. Johnson.  These, with the other slaves set apart to Mrs. Johnson, were determined by the chancellor to be the separate property of the appellee.

We affirm the decree.