## ANDERSON'S EX'R  *vs.*. ANDERSON'S HEIRS.

### [FINAL SETTLEMENT OF EXECUTOR'S ACCOUNTS.]

1. *Married woman's law of* 1848 *not retroactive.*—The law is settled in this State, that the act of March 1, 1848, securing to married women their separate estates, does not affect the husband's right to reduce to possession his wife's choses in action which accrued prior to the passage of that statute.

2. *Husband's marital rights; reduction of wife's choses in action to possession ; distribution of decedent's estate by consent.*—Where the slaves belonging to a decedent's estate remain undivided, after the payment of his debts and the final settlement of the administration on his estate, and are afterwards divided by consent among the several distributees, who execute reciprocal conveyances to each other for their respective shares;—the husband of one of the female distributees thereby acquires a complete equitable title to the slaves allotted to him and his wife; and, on his death, while thus in possession of them, his personal representative is chargeable with them as belonging to his estate.

3. *Allowance of counsel fees to executor.*—On final settlement of the accounts of an executor or administrator, he is not entitled to a credit for counsel fees paid by him on account of services rendered in contesting a proper charge against him.

4. *Allowance of fees to guardian* ad litem.—An executor or administrator can not complain, on error, of the allowance of compensation to the guardian *ad litem* of the infant distributees. on final settlement of his accounts and vouchers, since he is not thereby prejudiced.

APPEAL from the Probate Court of Greene.

IN the matter of the estate of James A. Anderson, deceased, on final settlement of the accounts and vouchers of John B. Thompson, the executor. The executor asked leave of the court to amend his inventory, by striking out the names of several slaves which were included therein, on the ground that they were so included by mistake ; and to allow him a credit for $450, paid by him to the testator's widow, to whom he had surrendered said slaves, for their hire during the time he had retained them. The distributees resisted each of these motions, and also moved the court to charge the executor with the hire of said slaves

from the time he delivered them up to the widow. On the evidence adduced touching these matters, (the material portions of which are stated in the opinion of the court,) the probate court decided each of the motions against the executor; and he reserved exceptions to its several rulings, as also to its refusal to allow him a credit for counsel fees paid by him, for services rendered on the settlement, and to the allowance of compensation to the guardian *ad litem* of the infant distributees. All the rulings of the probate court, to which exceptions were reserved by the executor, are now assigned as error.

WM. P. WEBB, for appellant.

W. COLEMAN, *contra.*

A. J. WALKER, C. J.—The main question in this case is, whether the appellant was chargeable, upon the final settlement of his accounts, as the executor of the will of James A. Anderson, deceased, with a negro woman, Jane, and her children, and with their hires. The appellant's testator died in possession of the slaves, and they were included in the inventory as a part of the estate of the deceased. But the executor afterwards delivered the slaves to the widow, and paid hire to her up to the time of delivery. The executor was legally justifiable in delivering the slaves, and paying hire for them to the widow, if they belonged to her. For the executor it is contended, that the slaves belonged to the widow; and for the children, that they were the property of the testator. It appears from the bill of exceptions, that the wife of James A. Anderson, the deceased, is the daughter of John Spaight; that John Spaight died in 1825, leaving a widow and three children; that the slave Jane belonged to his estate; that there was an administration upon the estate; that there was a final settlement of the administration, and a discharge of the administrator and administratrix; that the debts of the estate were paid; that Jane and the other slaves of the estate were left undivided, and, after the settlement of the

administration, remained collectively under the charge of the administratrix, who was the widow of the deceased, and her son : that in 1842 the appellant's testator intermarried with Elizabeth V. Spaight, one of the distributees of Spaight's estate, and that then the widow of Spaight placed Jane in the possession of the testator and his wife, to be held as a loan until a division was had; that the children of Jane have been born since that time; that Jane and her children remained in the possession of the said James A. Anderson, the testator, until some time during the year 1849, when the distributees of the estate of Spaight made a division of the slaves belonging to that estate, including Jane and her children, and joined in a conveyance, reciprocally conveying to each other their respective shares; that Jane and her children were allotted to Anderson and his wife, and that they afterwards were in the possession of Anderson, until he died. Upon these facts, did Jane and her children belong to Anderson, or to his wife, at the time of his death?

Without deciding the point, we grant, for the purposes of this opinion, that, until the division in 1849, the slaves Jane and her children belonged to the estate of John Spaight, deceased ; and that the *status* of the slave property of that estate was such, that an absolute right to his wife's interest in it did not vest in James A. Anderson, *jure mariti*, before the division in 1849. By marriage, a husband had, by the common law, a right to reduce his wife's choses in action to possession, and thus acquire a title to the same during the coverture. The first statute securing to married women their separate estates, was adopted on the 1st March, 1848. From 1842 to March 1st, 1848, James A. Anderson's relation to his wife's chose in action, consisting of a lawful claim to a distributive share of the slaves of her deceased father's estate, was governed by the common law. The common law gave him a right to reduce his wife's distributive share to possession, at any time during the coverture. This right was not taken away by the adoption of the married woman's law

of March 1st, 1848, but remained as complete and effective after the passage of that law, as it was before. The law has been so settled in this State, by the decisions in *Kidd v. Montague*, (19 Ala. 619,) and *Sterns v. Weathers*, (30 Ala. 712.) See, also, *Manning v. Manning*, 24 Ala. 386; *Hardy v. Boaz*, 29 Ala. 168; *Sharp v. Burns & Coles*, 35 Ala. 653.

It is probable, that the position which has been taken in this State, upon this subject, is irreconcilable with the position of the appellate court of Mississippi, in reference to a kindred question.—*Clark. v. McCreary*, 12 S. & M. 347; *Duncan v. Johnson*, 23 Miss. 130... But the doctrine announced by this court necessarily controls the title of property to a large extent, and, having been recognized as law for ten years, is not now open for controversy. We do not wish, however, to be understood as insinuating a doubt of the correctness of it; for we are inclined to think, that it is sustained by satisfactory reasoning in the decision of *Kidd v. Montague*, where it was first announced.

[2.] By virtue of the principle above stated, James A. Anderson had a right, notwithstanding the act of March 1st, 1848, to go on and reduce to possession his wife's distributive interest in the slaves of her father's estate; and if he did so in his life-time, a complete title vested in him, to the exclusion of his wife. The division, by the concurring consent of all the distributees, may not, according to previous decisions of this court, have had the effect of vesting the respective distributees with the legal title. But, as the debts of the estate were paid, and a final settlement of the administration had been effected, the division, and reciprocal conveyances of the distributees, certainly had, at least, the effect of investing each with the equitable title.—*Marshall v. Crow*, 29 Ala. 278; *Vanderveer v. Alston*, 16 Ala. 494; *Bethea v. McColl*, 5 Ala. 308; *Miller v. Eatman*, 11 Ala. 609. A court of chancery would, upon a suitable application, have ordered a division; and those who were interested may, by consent, do that which might have been accomplished through the agency of a court of chancery. The wife of James A. Anderson having, by the

division and deed, acquired a title to the slaves Jane and her children, even though it was purely equitable, and having possession thereafter, the husband, by virtue of his right to reduce to possession his wife's choses, acquired at least an equitable title, which is not affected by the married woman's law.

The executor was guilty of a palpable breach of duty in surrendering the property thus held by his testator, and the court properly charged him on account thereof.

[3.] The executor was not entitled to a credit for the fee paid his counsel, on account of services rendered in support of the attempt to relieve himself from the charge for the slaves Jane and her children. The litigation upon that subject was produced by his own error, and by an attempt to obtain the sanction of that error by the court. For the fees of counsel in such a litigation, the estate ought not to be charged.—*Smith v. King*, at June term, 1860.

[4.] If there was any error in making the allowance to the guardian *ad litem*, it was one which did not prejudice the appellant.

It is not necessary for us to notice the rulings on questions of evidence. They have not been presented by counsel in argument; and it is very clear that the court has committed no error in those rulings, which would have changed the result.

Affirmed.