## McCAA, ADMINISTRATRIX, *vs.* WOOLF ET AL., EXECUTORS.

[INJUNCTION—HUSBAND AND WIFE—ESTOPPEL.]

1. *Estate of intestate ; may be divided without an administration, when.*—Although the *legal* title to a distributive share of the estate of an intestate, can only be acquired through an administration ; yet, where the distributees are all adults, and there are no creditors, and the distributees, by agreement, divide the estate, and there is no unfairness, a court of equity will uphold such voluntary division.

2. *Voluntary division ; title of · husband to wife's share, nature of.*—Where the husband acquires the possession of the wife's chattels under such voluntary division, although he does not acquire a *legal*, he does acquire an *equitable* title, which a court of chancery will uphold and enforce.

3. *Reduction into possession by husband ; and bar of wife's right of survivorship ; case of.*—Scriven Cox, a single woman, dies after making a verbal bequest of her slaves to her two brothers, Robert and Joseph. There were no creditors, and her heirs and next of kin, these two brothers, and two married sisters, being all adults, agreed to carry out their deceased sister's bequest, without administration, and divided the slaves between Robert and Joseph, who took them into possession. Robert afterwards died, and bequeathed by will, his property, including these slaves, one-half to the children of his brother Joseph, and the other half, in equal parts, to the children of his two married sisters. His property was also divided without letters testamentary, but according to his will, by agreement between the children of Joseph and the children of his two named sisters, the husbands concurring as before. Three of the slaves acquired by Joseph, from his sister Scriven, after this, and after being in his possession for several years, were sold under an execution against him, and were purchased by McKinney, the husbands of the two married sisters being present at the sale and encouraging McKinney to become the purchaser, assuring him that his title would be good. The husband of one of the sisters, many years after, died, and his wife having been made administratrix of the estate of her sister Scriven, brought trover, as such, for these slaves,—*held*, that, under such a state of facts, the husband had, in equity, reduced the property into possession, and so barred the wife's right of survivorship ; that the equitable title of the purchaser was complete, and that a court of equity will perpetually enjoin a suit at law to recover them, resting merely on the legal title.

4. *Estoppel ; case of ; nature of.*—Where a husband is present at a public sale of chattels, in which his wife has an interest as distributee of an estate, and induces another to purchase, by declaring the title under which the property is sold, to be good, he estops both himself and his wife, if she survives him, from afterwards disputing the title of the purchaser. Estoppel operates as a conveyance of the title of the party estopped, to the opposite party.

APPEAL from Marengo Chancery Court.
Tried before Hon. N. W. COCKE.

THIS was a bill in equity, filed by Burwell McKinney, against E. T. Watlington, administrator of the estate of Scriven Cox, deceased, and others, praying that a certain action at law, which had been instituted against him by said administrator for certain slaves, might be perpetually enjoined. In the progress of the case, the bill was revived against Eleanor McCaa, as administratrix, and successor of Watlington, and in favor of H. A. Woolf *et al.*, as executors of McKinney. The essential facts of the case are so fully and plainly set out in the opinion of Mr. Justice Judge, that it is needless to repeat them here. At the hearing, on bill, answers, and proofs, the chancellor decreed a perpetual injunction against the suit at law. From this decree, the administratrix of Scriven Cox appealed, and here assigns for error the rendition of said decree.

RICE, SEMPLE & GOLDTHWAITE, and W. E. CLARKE, for appellant.

WM. M. BROOKS, and H. A. WOOLF, *contra.*

JUDGE, J.—The principal facts of this case, are as follows :

Scriven Cox, (a young woman,) died in 1841, at about the age of eighteen years, without ever having been married. She left surviving her, as her heirs-at-law and distributees of her estate, two brothers and two married sisters, viz : Joseph H. Cox, Robert L. Cox, Eleanor S. McCaa, the wife of doctor William L. McCaa, and Aramintha Jones, the wife of Dr. James R. Jones. Scriven owned before, and at the time of her death, several slaves. During her last illness, she expressed a desire that her brother Joseph should have, after her decease, one-half of her slaves, and that her brother Robert should have the other half—she naming the particular slaves she desired' each to have. After her death, by consent, there was no administration upon her estate, and her wishes in regard to the division and allotment of her slaves, were carried out. Robert L.

Cox was a minor at the time, but under an administration he would have been entitled to only one-fourth of the slaves; whereas, under the division, he received one-half thereof; and his legal representative, who is a party to this suit, insists upon the division not being disturbed. It does not appear that she owed any debts at the time of her death, and the facts and circumstances in evidence, justify the conclusion, that both Doctors McCaa and Jones assented to, if they did not actively participate in, the disposition of the slaves, in accordance with Scriven's previously expressed desires. Dr. McCaa actively exerted himself to prevent letters of administration upon her estate from being granted, that this purpose might be accomplished. Joseph H. Cox held, for years, the possession of the slaves he had thus acquired from his sister Scriven's estate, claiming them as his absolute property, with the knowledge and consent of both Doctors McCaa and Jones, and without objection, so far as appears, from either of their wives. Robert L. Cox died in 1843, leaving no wife or children surviving him. By his will, he bequeathed to the children of his brother Joseph one-half of his slaves, and to the children of Doctors McCaa and Jones, the remaining half, to be equally divided between them. Among his slaves thus bequeathed, *were those he had received from the estate of his sisters Scriven.* It does not appear that he owed any debts at the time of his death; and by consent, and without probate of his will or administration upon his estate, Joseph H. Cox, and Doctors McCaa and Jones, in 1844, divided all the slaves of his estate, in accordance with the directions of the will, between their respective children—each of the parents taking the possession and control of his children's portion. In 1843, three of the slaves which Joseph H. Cox had received from the estate of his sister Scriven, were levied on by the sheriff of Marengo county, as the property of the said Joseph H., under execution against him, and were sold under levy. At the sale, Burwell McKinney, the complainant below, became the purchaser for a valuable consideration, and the slaves being present, went immediately into his possession. Doctors McCaa and Jones were present

at the sale, and urged several persons, and among them McKinney, to bid for, and purchase the property; they being anxious, seemingly, that the property should bring the highest possible price. It was publicly announced at the commencement of the sale, that the title of the purchaser would be good. McKinney's possession as purchaser continued unmolested until 1853, when letters of administration upon the estate of Scriven Cox were, for the first time, granted. Doctor McCaa died before the grant of these letters. The slaves, or some of them, in the meantime, had natural increase. The administrator first instituted an action of detinue against McKinney for the recovery of the three slaves which had been purchased by him at the sale above mentioned; subsequently, the appellant, Eleanor S. McCaa, became a successor in the administration, and instituted, in her representative character, an action of trover against McKinney for the alleged conversion by him of the three slaves and also of their increase. These actions at law were enjoined by McKinney in the present suit, and on the final hearing, the chancellor decreed a perpetual injunction.

The principal question for our determination, is, whether, under the rules of the common law as applicable to the facts and circumstances of the case, there was such a reduction to possession by Doctors McCaa and Jones, of the slaves purchased by McKinney, as will bar the right of survivorship of their wives respectively?

Under the common law, the husband, by intermarriage, acquires a right to the wife's chattels; and this right is either absolute and unlimited, or qualified and limited, according to the nature and condition of the property. As to personal chattels in possession, the title to which may be passed by delivery, the husband acquires an absolute and unlimited title, the mere marriage being a gift of them which divests entirely the title of the wife, and vests it in the husband. In regard to her personal chattels in action, the husband's right is qualified and limited by her right of survivorship; but he has a potential ownership, which is paramount to her right of suvivorship, by the exercise of which that right may be absolutely divested from the wife,

McCaa, Administratrix, v. Woolf et al., Executors.

and her interest vested in the husband, or a stranger, according to the character of the act of ownership. As was said by an eminent judge, (Gibson, C. J., in Waelper's Appeal, 2 Penn. Rep. 73,) " there is error in supposing that reduction to possession is the foundation of the husband's right, and not merely the evidence of his will. There has been a general error, here and abroad, in receiving the evidence of a thing, as the thing itself, which has complicated this part of the law with arbitrary distinctions. The true foundation of the husband's title, is his power over his wife's choses, coupled with an exercise of his will, of which reduction to possession is a particular indication, but not a conclusive one."

According to the most approved elementary writers, there are many acts which will amount to a reduction to possession, short of an actual receipt, by the husband ; (1 Bright's Husband and Wife, 55 ; Clancy's Husband and Wife, 112 ;) and such is the well established doctrine of this court. One act which will accomplish this result, is the transfer by the husband of the wife's chose to a third person, if the transferee acquires the possession under the transfer during the coverture ; and this, whether the transfer be with, or without consideration.— *George v. Goldsby*, 23 Ala. 326 ; Clancy's Husband and Wife, 104; ib. 112 ; Hill on Trust. 415. A case aptly illustrative of this proposition, is *Hanson v. Miller*, 14 Sim. 22. In that case, an infant who was entitled to a trust fund, married without a settlement. The trustees refused to pay over the trust fund to the husband, but insisted that a part of it should be settled upon the wife. This being agreed to by the husband, the trustees paid part of the fund to the husband, and the remainder, amounting to £500, was paid by the direction of the husband and wife to new trustees, upon trust for the wife's separate use for life, with the power to her to appoint by will, and, in default of appointment, to her next of kin. The wife having survived her husband, sued for the transfer of the £500, but it was held that *the transfer from the old to the new trustees, was a reduction into possession by the husband.*—1 Bright's Husband and Wife, 55.

With respect to the wife's equitable choses in action—such as are only recoverable in a court of equity—they, too, may be assigned by the husband, and if recovered during the coverture, the wife's right of survivorship will be defeated. 1 Bright's Husband and Wife, 80, 87. But if the aid of a court of equity is invoked for the recovery of such a chose, it is a rule of equity that it will not give effect to the husband's assignment, unless when made for a valuable consideration; and in such case, too, the wife's equity to a settlement, if such right existed against the husband prior to the transfer, will be enforced. But if the husband, prior to the transfer, can acquire the possession, *jure mariti* ; or if the assignee of the husband can acquire the possession under the transfer during the marriage ; in either event, chancery will not disturb the possession, for a court of equity will not controvert the legal title of the husband to his wife's personal fortune.—2 Kent, 141.

The wife's claim to distribution in an estate, is ordinarily enforceable in the probate court, in which the estate is undergoing the process of administration ; but in a proper case it may be enforced in equity. Such a claim, therefore, may properly be denominated, a claim of an equitable nature.

It is the settled doctrine of this State, that the *legal* title to a distributive share of an estate, can only be acquired by and through an administration. It is also well settled, that where the distributees of an estate are adults, and there are no creditors, they may waive the formula of an administration, and by agreement divide the estate ; and that if no unfairness intervene, chancery will uphold it, upon the principle that a court of equity will presume that to be well done, which ought to have been done.—*Vanderveer v. Alston et al.*, 16 Ala. 494. It has also been settled in this State, that if the husband acquires the possession of property of the wife, which has been thus divided, he has not the legal title to the property, but has a complete equity in it, which will be upheld by a court of chancery.—*Vanderveer v. Alston et al., supra ; Anderson v. Anderson*, 37 Ala. 683 ; *Perryman v. Greer*, 39 Ala. 133.

An application of the legal principles above announced

to the facts of this case, will, we think, conclusively show, that the chancellor did not err in the rendition of his decree. The waiver of letters of administration on the estate of Scriven Cox, deceased, there being no creditors of the estate—the division of the slaves belonging to her estate, between Joseph H. and Robert L. Cox—the continuous possession of Joseph H. Cox, under the circumstances, of those allotted to him—and the division of that portion which had been allotted to Robert L. Cox, as belonging to the estate of the latter, (which was an implied recognition of the title of Joseph H. Cox to the slaves he had acquired from the same sources,) were probably sufficient of themselves, to extinguish the title of Doctors McCaa and Jones to the slaves, and defeat the right of survivorship thereto, of their respective wives. But when there is added to these the further facts, of the sale by the sheriff, and the participation in that sale by Doctors McCaa and Jones, and the purchase of McKinney at the sale by their advice and solicitation, and the actual possession of McKinney under the purchase, there can be no doubt as to the accomplishment of the result named ; and this, even though it be conceded that Joseph H. Cox had not such a title to the slaves as was the subject of levy and sale under execution—which last mentioned proposition is not necessary to be here either affirmed or denied.

No portion of the law of equitable estoppel is better settled, or more important, than that which renders a sale, made without authority or title, valid, and makes the purchaser acquire a good title, if the sale is sanctioned at the time, or ratified subsequently, by the owner.—2 Smith's L. C., t. p. 660. See, also, *Harrison v. Pool*, 16 Ala. 167 ; *McCrery v. Remson*, 19 Ala. 430.

The authorities, we think, clearly show, that the participation in the sale, of the two husbands, in the present case, as shown by the record, made the sale, in legal effect, their own act, and consequently vested their respective titles in the purchaser.—2 Smith's L. C., t. p. 662. After their conduct at the sales, no assertion of the title of either could have been made in any forum, legal or equitable, without its being successfully met with the legal rule applicable in

in such cases, viz: "Estoppel stops your mouth." Even in the case of lands, where a writing is necessary to the conveyance of title, an estoppel may operate as a conveyance. This doctrine is very clearly recognized by this court, in *Bean v. Welsh*, 17 Ala. 770. The court, in their opinion in that case say, "that an estoppel will not only bar a right or title, but will pass one to him in whose favor the estoppel works." And the court further say, that "if indeed an estoppel could not operate as a conveyance, or as a medium through which the title would pass to him in whose favor the estoppel works, we might frequently lock up the title in him and his heirs against whom the estoppel operated, and the party for whose benefit it was intended, might find himself without title, and unable to recover from a mere intruder," &c.—See, also, Smith's L. C., t. p. 623.

If an estoppel may operate as a conveyance of realty, it surely can have the effect to pass the title to personalty, as to which a title may be passed by delivery.

In *Commonwealth v. Shuman's Admr's*, 6 Haine's Penn. Rep. 346, the supreme court of Pennsylvania say: "Conceding for the sake of the argument that marriage gives to the husband but a naked power over the wife's choses in action, and is not a gift upon condition that he reduce them into possession during its continuance, still if he has once received the proceeds of a sale of them, equity would seem to require that a title, subsequently acquired by him, should enure to the benefit of his assignee. Equitable estoppels of this character apply to infants as well as adults, to insolvent trustees and guardians, as well as persons acting for themselves, and have place, as well where the proceeds *arise from a sale by authority of law*, as where they spring from *the act of the party*."

If in the present case, the title of the two husbands, respectively, had not been divested by the waiver of letters of administration on the estate of Scriven Cox, and the division by consent of the slaves of her estate, and the long acquiesence in, and subsequent ratification of that division by each of them, it certainly was divested, as we have before remarked, by the transmission thereof to McKinney, on his purchase. The qualified title of the husband, and

the right of survivorship of the wife, in each case, were both then in existence, and within the husband's control. And if reason and authority are to be followed, there is no escaping the conclusion, that the power of the husband was exercised in such manner as to extinguish, at one and the same time, both the title of the husband, and the corresponding right of survivorship of the wife.

The decree of the chancellor is therefore affirmed.

BYRD, J., not sitting.