[Teague et al. v. Corbitt, Administrator.]

# Teague *et al. v.* Corbitt, Administrator.

*Bill in Equity for Final Settlement and for Distribution.*

1. *Chancery jurisdiction over administrations, &c.; how and by whom invoked.*—The court of chancery retains its original jurisdiction over administrations, distribution of assets and compulsory payment of legacies, which may be invoked by heirs, distributees and legatees at any time before the concurrent jurisdiction of the Probate Court has attached, without the assignment of any special reason, yet it cannot be invoked by the administrator, except under special circumstances, &c.

2. *Necessary parties; administrator ad litem.*—All the next of kin are, as a general rule, necessary parties to a bill for a final settlement and distribution of the estate of a deceased intestate; and when such estate must be represented, and there is no executor or administrator, the statute (Code of 1876, §§ 2625, 2626,) authorizes the Court to appoint an administrator *ad litem,* for the particular proceeding.

3. *Right to proceed against one or more sureties without joining others.* If the absence of one of the sureties on the bond of the administrator, without the State, is not (and the court is inclined to think it is) a sufficient reason for omitting to make him a party, the complainants have the right, under the statute (Code of 1876, § 3754,) to proceed without him.

4. *Unnecessary averments; sufficient averment.*—In a bill by heirs and distributees, to compel the final settlement and distribution of an estate, disclosing their relationship to the intestate, it is not necessary to otherwise allege their respective interests, as they are defined by the statutes of descents and distributions; nor is it necessary to aver the amount of assets the administrator had received, and for which he was accountable. A general averment that the intestate left a large real estate, which the administrator had converted into money, under sales by order of the Probate Court, and received other assets for which he is accountable, is sufficient.

5. *Judgment against administrator; when not entitled to credit of same.* If an administrator refuses payment of a debt of his intestate on the sole ground that it is barred, and the estate is thereby involved in litigation, acting as his own attorney in defense, while he is not bound to plead the statute of limitations, he must exercise the same degree of diligence and skill as in making any other defense, especially when he stands in such confidential relations to the creditor as require his conduct to be jealously scanned; and if through want of such diligence, &c., he fails in the defense, he is not entitled to a credit for the judgment, though he have to pay the same.

6. *Money from sale of lands; how regarded; admission of administrator as affecting the heirs; administrator, how subrogated for paying a barred debt; protection afforded the heir.*—Money arising from the sale of intestate's lands, under a decree of the Probate Court, must be regarded as a substitute for the land itself, as to the heirs and all questions of charge and liability, or of descent or succession. No privity exists between the administrator and heir or devisee, and the real assets cannot be bound by any admission or acknowledgment made by the personal representative; and if an administrator or executor pays a debt against the estate, barred by the statute, he is simply subrogated to the place of the creditor, and clothed with his rights to charge the personal assets only, he cannot create for himself greater rights

[Teague et al. v. Corbitt, Administrator.]

than the creditor had. And if payment of such a debt is claimed from the real assets, the heir may protect himself by showing that the debt on which the judgment was founded, was barred by the statute of limitations.

7. *Rules as to compensating trustee, (who is his own attorney,) for professional service.*—Since the case of *Harris v. Martin* (9 Ala. 895), the rule has been to allow a trustee, who is an attorney, compensation for professional services necessarily and *bona fide* rendered for the trust estate. The amount of such compensation is not to be ascertained by inquiring the usual and ordinary compensation for such service, where no other relation than that of attorney is borne; but the true inquiry is, "what would a prudent individual, invested with the functions of administrator, feel authorized to pay an attorney, taking into consideration all the circumstances of the estate." The mere submission of a cause requires no professional skill, and compensation for it as a professional service cannot be allowed a trustee.

8. *When compensation allowed administrator for acting as, and employing a counsel.*—An administrator should be allowed a reasonable compensation for service as an attorney, in resisting an unsuccessful application to compel him to give a new bond; but it must be first shown that he has paid the amount for which credit is claimed.

9. *Same.*—The administrator is not entitled to compensation for his own services in the capacity of an attorney, when he unnecessarily employed another counsel to conduct the suit.

10. *Same.*—An administrator is not entitled to compensation for his services rendered as an attorney in defense of a suit in which his own neglect or wrong involved the estate.

11. *Same.*—An administrator is entitled, on final settlement, to an allowance for reasonable counsel fees, paid by him for services rendered, except in the maintenance of improper contests with the heirs or distributees; and such contest, in general, must, in the absence of peculiar facts, be regarded as improper, when unsuccessful.

APPEAL from the Chancery Court of Henry.

Heard before the Hon. N. S. GRAHAM.

The appellants, as heirs at law of one Joseph Lawrence, deceased, filed their bill against appellee for a final settlement, to which appellee demurred, as follows: "*First*, for non-joinder of parties complainant in this, to-wit: Thomas J. Lawrence was an heir at law and distributee of said Joseph Lawrence, deceased, as shown by the bill, and died after his father, and is not made a party complainant, as the law in such cases provides; *second*, for non-joinder of parties defendant in this, to-wit: J. M. B. Kelly was and is a surety on the bond of said J. A. Corbitt, as administrator of the estate of said Joseph Lawrence, deceased, as shown by the bill, and he is not made a party to the bill, and not sufficient reason is shown why he is not made a party; *third*, for the want of equity in this, that there is a complete and adequate remedy at law, to-wit, in the Probate Court, in this case; *fourth*, for indefiniteness in this, that they do not state the amount of their claims, or any amount due by respondents to complainants." The respondents also filed their answer to the bill; and upon considering the pleadings, the

[Teague et al. v. Corbitt, Administrator.]

chancellor overruled the above demurrers, and ordered a reference requiring appellee to file his account and vouchers with the register, who was directed to report what was in the hands of the administrator for distribution.

The only two matters in dispute relate solely to credits claimed by the administrator and allowed by the chancellor, the material facts concerning which are as follows : In 1866 Joseph Lawrence died, leaving a large estate of real and personal property. In 1866 Samuel C. Daniel, a son-in-law of the deceased, was appointed administrator in chief. In October, 1869, at the instance of two of the heirs at law, Daniel was removed for failing to give an additional bond as administrator, and on the 14th of December, 1869, the defendant, Corbitt, being general administrator of Henry county, letters of administration issued to him as administrator *de bonis non* of the estate of Joseph Lawrence. On the hearing before the master, the defendant proved that on the 10th of March, 1867, the attorney of the payees presented to Daniel for payment a note, as follows :

"$1,411.71.                     " ABBEVILLE, ALA., April 1, 1857.

" On or before the first day of January next we, or either of us, promise to pay Wm. G. Porter & Co., or bearer, fourteen hundred and eleven 71-100 dollars, for value received, with interest from date.                     " E. W. TEAGUE.
                                                 " JOSEPH LAWRENCE."

Endorsed thereon are these credits :

" Rec'd—Apala, Nov. 26, 1858—one hundred and eighty-six 66-100 dollars, for interest on the note to date."

" Rec'd—Dec. 5, 1859—one hundred and fifteen 44-100 dollars, for interest on this note to date."

Presentments endorsed as follows :

" Presented to me, S. C. Daniel, administrator of J. Lawrence est., March 10, 1867."

" Presented to me this day, February 10, 1870.
                     " J. A. CORBITT, Adm'r *de bonis non*."

The defendant also proved that he and Daniel refused to pay the Porter & Co. note " because it was barred by the statute of limitations."

Defendant also proved that on the 4th day of May, 1870, suit was commenced by summons and complaint against him as administrator *de bonis non* of said Lawrence, on the above Porter & Co. note, by Hasting E. Owens, as assignee and owner of said note ; and that on the 9th day of September, 1870, in the Circuit Court of Henry county, where said suit was pending, the following proceedings were had and the following entries made on the trial docket :

" Taken up out of its order, and tried by consent. Jury and verdict for plaintiff, $2,634 30-100."

Minutes contain following judgment entry :

"No. 2338. " SEPTEMBER 9, 1870.

"*Hasting E. Owens v. Jesse A. Corbitt,* administrator *de bonis non* of Joseph Lawrence, deceased. Came the plaintiff, and the cause is taken up out of its order, by consent. Thereupon came a jury of good and lawful men, to-wit: W. J. Doswell and eleven others, who upon their oaths do say they find for the plaintiff, and assess his damages at two thousand six hundred and thirty-four 30-100 dollars for his damages and the cost in this behalf expended ; for which let execution issue, to be levied of the goods and chattels, rights and credits of the defendants intestate in his hands unadministered."

No appearance was entered by defendant, or any other attorney for him. Defendant himself was a practicing attorney in this State. No written plea was filed or presented in said case of *Owens v. Corbitt, Adm'r.* The only defense made was the *oral* suggestion of defendant to the presiding judge, that the note sued on was barred by the statute of limitations. The only evidence in this case was the note, and the statement of Owens, the plaintiff, that the credits endorsed on the note were in the handwriting of one of the payees of the note. Defendant made no objection and no exception to any evidence ; and the note and credits, offered alone on Owens' statement that the credits were in the handwriting of one of the payees of the note, being all the evidence in the case, the presiding judge gave judgment for the plaintiff. No law was read to the court ; no argument, and no exception made or taken in the case. Complainants objected to the parol proof offered by defendant in relation to his defense of Owens' suit, and the judgment of the presiding judge, on the suggestion of the oral plea of the statute of limitations that the note was not barred. The register overruled the objection and the complainants excepted. Owens, the plaintiff, was Corbitt's law partner when suit was brought and judgment recovered on the Porter & Co. note. In the language of the defendant, " the suit was conducted by said Owens, who managed the case on the trial." The defendant is shown, in the report of the register, as having sworn on the reference, in these words : " At the time the judgment was obtained against me as administrator, in favor of Owens, on the Porter & Co. note, I had no money in my hands belonging to the Lawrence estate that I remember." " At that time

the final settlement of Samuel C. Daniel, the administrator in chief, was pending in the Probate Court, and all of the assets of said estate were in the hands of said Daniel, except the notes which had been given for the purchase-money of the land belonging to said estate, which I had sold as administrator *de bonis non*, under the order of said Probate Court, which was obtained by said Daniel as administrator." The order to Daniel, under which Corbitt sold the land of his intestate, authorized the sale of the land for distribution. All the orders granted to Corbitt to sell the land, and every sale made by him, he proved were made for distribution. Defendant swore, on the reference, that "after the settlement with Daniel I received only about $1,000, of the personal assets of said estate, upon which the cash was realized." On settlement with Daniel, as administrator, Corbitt, as administrator *de bonis non*, recovered judgment for about $11,000, on which execution issued, and was returned "no property found." Nothing was ever collected on the decree against Daniel, he and his sureties being insolvent on his first bond, and on his second bond his wife and the wife of Carter were sureties; and, on the petition of complainant, Teague, the last bond was declared void and insufficient, a new bond required, which was not given, and Daniel was removed, &c. The principal alleged defaults of Daniel were under his first bonds. The defendant also proved, on the reference, the sales of land he made for distribution, the names of the purchasers, amounts of the purchase-money notes, and when due; he also proved the several amounts he had collected on the several notes given for the purchase-money of the land, and what balances remained unpaid by the several vendees, and what decrees he had recovered in chancery, as vendor's administrator, on the several land notes.

The master reports that the defendant "received of the solvent assets of said estate the sum of fifteen thousand and seventeen dollars and seventy-six cents." The defendant swore that "the entire *proceeds* of all the solvent claims and assets which came into my hands amount to about $11,000— not exceeding $12,000." This last statement, by defendant, under oath, was in immediate connection with what he swore about his sale of the real estate, under the Daniel orders and other orders he (Corbitt) obtained for the sale of other lands. The defendant is shown, by his own proof, (as appellants say,) to have applied the identical money endorsed as a credit on the land notes, to the owners' judgment on the Porter & Co. note.

The complainants proved, by E. W. Teague, the co-maker with Lawrence of the Porter & Co. note, that he was principal and Lawrence security, and that the credits endorsed as payments on the Porter & Co. note were made by him, Teague.

On these facts, the register decided that the administrator, Corbitt, was not entitled to a credit of the amount of the Porter & Co. note, and the defendant excepted, and the chancellor sustained the exception, and directed a credit, which has been allowed and reported, of $4,230.13, the amount of payments on the owners' judgment on the Porter· & Co. note. The decree of the chancellor that the defendant, Corbitt, as administrator, is entitled to a credit of the payments made by him in satisfaction of the Owens judgment against the administrator for the Porter & Co. note, is one of the assignments of error. The next assignment of' error is the allowance made by the chancellor for attorneys' fees in the several cases reported by the master. Other· assignments of errors in the decrees are also presented.

J. L. PUGH, for appellants.—1. When Corbitt sold the land for distribution, the onus was and is on him to show that he had personal assets to pay it. He can't touch the real assets until he shows the personal assets were exhausted, and that a debt remained unpaid which was barred, and a subsisting legal charge against the land.—See *Waring v. Lewis*, December term, 1875.

2. Was the Porter & Co. note barred as against Lawrence by the statute of limitations, on the fourth day of May, 1870,. when the suit was commenced? When the action was commenced, the note on its face had been due over seven years. and a half. Then it was certainly barred, unless there was,. in the language of the Revised Code (§ 2914), "a partial payment made upon the contract by the party sought to be charged before the bar is complete." "When a partial payment is entered as a credit on a promissory note, the party relying thereon is bound to prove that such payment was. made, and·its date."—1. Port. 247 ; 7 Port. 537. "A partial payment by one of several joint obligors, before the statute of limitations has effected a bar, does not prevent the perfecting of the statutory bar as to the others," &c.—41 Ala. 222.

3. The judgment is conclusive only against the *personal assets;* and as to such assets,.the distributees are powerless to compel an account against such a judgment except by suggesting a *devastavit,* and proving bad faith, fraud or collusion.

in the judgment—for the plain reason, that as to personal assets the administrator's power of appropriation is exclusive and absolute, when exercised in good faith— *Waring v. Lewis et al., supra.*

4. The precise question which involves Corbitt's right to the credit on account of the judgment of Owens against him, has been fully considered in all its aspects, and no principle of law is better settled than that the chancellor failed to enforce this law. The chancellor, in his decree, treated the Owen judgment as being as conclusive against the heirs at law and distributees on the final settlement, as it was against Corbitt himself, and he paid no attention to the fact that the complainants were not parties or privies, and were prohibited from so making themselves by our own decisions, and were unavoidably total strangers to the judgment. The first case upon this interesting question is *Darrington et al. v. Borland,* 3 Porter, 38. The next is the case of the heirs of *Bond v. Smith's Administrator,* 2 Ala. 660. A strictly analagous principle is settled in *Troy v. Smith & Shields,* 33 Ala. 470; *ib.* 142. The following cases are conclusive in logic and law : *Beckett v. Selover,* 7 Cal. 228; *Stewart v. Montgomery,* 23 Penn. S. Rep. 412; *Sergeant's Heirs v. Ewing,* 36 Penn. S. R. 160; *Steel v. Leneberger,* 59; *ib.* 313; *Stone et al. v. Wood,* 16 Ill. 179; *Stacey v. Thrasher,* 6 How. (U. S.) 60.

5. On a final settlement, the distributees are not estopped by a judgment against the administrator from showing that the debt on which the judgment is founded is barred by the statute of limitations, and that the administrator could not, by any "act, device or contrivance," make it a charge on the realty.—The cases in 7 Ala. 304; 9 Ala. 502; 25 Ala. 79; 28 Ala. 47.

6. Taking it for granted that the rule is well established, that professional service must be shown to have been *necessary* and *beneficial* to the estate, and not made necessary by the improper act, or improper claim, on settlement by the administrator, I only ask an examination of the evidence. See, also, *Anderson's Executors v. Anderson's Heirs,* 37 Ala. 687; *Bates, Adm'r v. Vary, Adm'r,* 40 Ala. 437. On the subject of the degree of diligence required by an attorney, and his responsibility for a failure, see 30 Ala. 482; Sherman and Redfield on Negligence, 245-6.

HENRY R. SHORTER, *contra.*—1. It is objected that the judgment was paid out of proceeds of the sale of land. Suppose it was a fact in equity, "what a party does voluntarily

is well done, if he could be compelled thereto." In Alabama, land descends to the heir, subject to the payment of the intestate.—Code, § 1888. There was a judicial ascertainment of the existence of the debt against the intestate, and judgment against the administrator was valid, unless *fraud* or *collusion* were averred and proved. The administrator was not ignorant of the law, for he pleaded the statute of limitations; he was not negligent in not taking an appeal to the Supreme Court, for he testifies that in not reserving a bill of exceptions to have the case reviewed in the Supreme Court, *he deferred to the opinion of the presiding judge.* He was neither ignorant nor negligent; and it made no difference for what purpose the lands were sold, if they were sold, and there was money in hand, it was his plain duty to pay the judgment and all debts, before making distribution; and he could have been compelled thereto. If the judgment was wrong, he simply made a mistake *in the law,* and the judge taking the case simply made a mistake *in the law* in letting the plaintiff recover.—See *Pearson and Wife v. Darrington,* 32 Ala. 257, par. 20, 21; 4 Ala. 493. In *Darrington v. Borland* (3 Port.), and in *Bond's Heirs v. Smith* (2 Ala. 660), the creditor filed his bill and proceeded directly against the heirs on their land—a very different state of facts from the case here presented. "An administrator who, believing that he has assets of the estate ample for the payment of all its debts, suffers judgment to be entered against him, will be relieved, if these assets become insufficient through unexpected depreciation in their value."—*Dillon's Executor v. Rice,* 1 Randolph, 438.

2. The existence of the debt is clear, notwithstanding the statute of limitations. And I conclude this argument by saying, that when Corbitt acted in good faith in refusing to pay *the note,* because barred; when he defended the suit in good faith, paid the judgment, which he was compelled to pay, he will not be refused the credit for it on final settlement, at the instance of the very same heirs who have a large amount of the personal assets in their hands, and which fund is, *in equity,* liable to pay this just debt, the existence of which has never been denied.

3. As to the allowance of counsel fees, all the points raised in the case are noticed, and reference made to the record for the facts connected with the suits in which counsel were employed. It is insisted that the allowance fees were just and proper. It is certainly right in making such allowances to consider, *first,* the necessity for the services of the attorney; and, *second,* the value of the services rendered.

[Teague et al. v. Corbitt, Administrator.]

BRICKELL, C. J.—1. The principle to be extracted from our decisions is, that the court of chancery retains its original jurisdiction over administrations, the marshaling and distribution of assets, and the compulsory payment of legacies. The jurisdiction may be invoked by heirs, distributees, or legatees, at any time before the concurrent jurisdiction of the court of probate has attached, without the assignment of any special reason; though it can not be by the executor or administrator except under special circumstances, where the powers of the court of probate are inadequate, or injustice to himself or injury to the estate may arise.—*McNeil v. McNeil*, 36 Ala. 109. No proceeding had been commenced in the court of probate for a final settlement of the administration, and none for distribution, prior to the filing of the present bill, and the case presented by it, falls within the original jurisdiction of a court of equity.

2. All the next of kin are, as a general rule, necessary parties to a bill for a final settlement and distribution of the estate of a deceased intestate, "so that the rights and claims of all may be conveniently established at the same time and in the same suit."—Story's Eq. Pl. § 89. It is not necessary to consider whether the averments of the bill disclose a case in which the court would dispense with the presence of a personal representative of Thomas J. Lawrence, a deceased distributee, and permit the original complainants as his next of kin to recover directly his distributive share. The statute confers on the court authority, when the estate of a deceased person must be represented, and there is no executor or administrator, to appoint an administrator *ad litem*, for the particular proceeding.—Code of 1876, §§ 2625–26. The bill averring there was no personal representative of Thomas J., an administrator *ad litem* was appointed in pursuance of the statute, and the cause of demurrer in this respect removed, if it was well taken.

3. A plaintiff having a joint demand, may proceed in equity, against one or more of the parties thereto, without joining the others.—Code of 1876, § 3754. If the absence of Kelly, one of the sureties on the bond of the administrator, without the State, and beyond the jurisdiction of the court, was not, as we incline to think it was, (*Moore v. Armstrong*, 9 Port. 667,) a sufficient reason for omitting to make him a party, the complainants had the right under the statute, to proceed without him.

4. The bill discloses the relationship of the complainants to the intestate, and the statutes of descents and distributions

fix their character as heirs and next of kin, and define their respective interests. It was not necessary to aver that they were entitled to recover of the defendants any particular sum, nor was it necessary to aver the amount of assets the administrator had received, and for which he was liable to account. The general averment that the intestate left a large real estate which the administrator had converted into money, or choses in action, by sales under decrees of the court of probate, and that he had received large sums of money from the assets, real and personal, for which he was liable to account, bring the bill within the general rule, that a general charge or statement of the matter of fact is sufficient.—Story's. Eq. Pl. § 28. Greater particularity would have compelled the complainants to enter into mere matters of evidence. The demurrer to the bill was properly overruled. This disposes of the cross-assignment of errors made by the appellees.

5. The administrator claimed a credit for payments made on a judgment rendered against him in the Circuit Court of Henry county, on the ninth day of September, 1870, in favor of Hastings E. Owens, founded on a promissory note of the intestate and one Teague, on which the intestate was the surety of Teague. The date of the note was the first day of April, 1857, and it was payable to William G. Porter & Co., on the first day of January, 1858. There are credits endorsed on the note in the handwriting of one of the payees, the last of which bears date, December 5 1859, not reciting by whom they were made. The suit ripening into judgment on this note, was commenced on the fourth day of May, 1870. The intestate died in October, 1866, and administration in chief on his estate was, in November, 1866, committed to Daniel, a son-in-law. The note was presented to Daniel, as administrator, on the 10th day of March, 1867. In October, 1869, Daniel was removed from the administration, and on the 14th of December, thereafter, administration *de bonis non*, was committed to the appellee, Corbitt, as general administator of Henry county. On the 10th day of February, 1870, the note was presented to Corbitt. In March, 1870—the precise day is not shown—the personal representatives of the payees transferred the note to Owens, the partner in the practice of law of the administrator, and who remained his partner until after the rendition of judgment; the particular time of the expiration of the partnership is not shown. The consideration of this transfer, beyond the payment by Owens of the fee of the attorney of the payees who had the custody of the note, does not appear. Owens instituted the suit by

[Teague et al. v. Corbitt, Administrator.]

himself, as his own attorney ; and Corbitt insisting the statute
of limitations was a bar to a recovery, and for that reason
having refused payment, as attorney for himself as adminis-
trator, assumed the defense of the suit.   The suit by consent
was taken up and tried at the first term of the court, when
it was not regularly triable until twelve months thereafter.
No plea was filed, but there was an oral suggestion to the·
court that the note was barred by the statute of limitations,.
Owens admitting the credits endorsed on it were in the
handwriting of one of the payees, but offering no evidence to
show that such payments had been actually made.   These
payments were in fact made by Teague, and not by the in-
testate, as is now shown by the evidence.   Teague and his
place of residence was known to Corbitt, but he made no·
inquiry of him as to whether these payments were made by
him or the intestate.   It was not suggested to the court, that
the burthen of proving these credits rested on the plaintiff
to avoid the bar of the statute, nor was there any authority
to satisfy the court such was the law referred to or intro-
duced.   The administrator, in his capacity of counsel for
himself, was content with an oral suggestion that the statute
was a bar, and the admission of the plaintiff that the credits·
were in the handwriting of one of the payees.   On these un-
disputed facts, we can not hesitate to declare the adminis-
trator is not entitled to a credit for any payments made on
this judgment.

An administrator is bound to defend the estate he repre-
sents against claims which he may know or have good reason
to believe are not well-founded; or against which a ground
of defense exists, the intestate could have preferred.   In
making such defense he is bound to the same degree of dili-
gence that he is in the prosecution of causes of action accru-
ing to him in his representative capacity.—*Fagan v. Fagan*,
15 Ala. 335 ; *Pearson v. Darrington*, 32 Ala. 227.   Whenever·
he claims a credit, and it becomes matter of dispute with
creditors, or with the heirs or distributees, the burthen of·
proving its correctness devolves on him.   If it be a debt
against the intestate, he must prove it by the same degree of·
evidence the creditor would have been compelled to intro-
duce, if it had not been paid, and he had been compelled to
an action for its recovery.—*Savage v. Benham*, 11 Ala. 49 ;
*Gaunt v. Tucker*, 18 Ala. 27 ; *Pearson v. Darrington, supra*.
The application of the assets to the payment of claims which
do not of themselves afford *prima facie* evidence of their va-
lidity ; or, if affording such evidence, which he knows, or·

has good reason to believe, or the means of ascertaining by proper diligence, to be unjust or illegal, is a *devastavit*. If he pay a bond founded on a gaming, or any other illegal consideration, or a debt, the consideration of which has failed, or which has been paid by the intestate, with knowledge of the facts, or without using proper diligence to be informed of them, he must bear the loss, if those to whom he stands in the relation of a trustee, think proper to charge him. 2 Lomax's Executors, 488, top p.

A judgment against him, in favor of a creditor, is *prima facie* evidence against other creditors, and distributees, of the validity of the demand on which it is founded, and of his liability to pay it. It is not conclusive, and when he claims a credit for payments made on it, other creditors or distributees may show the invalidity of the demand, and that the judgment was the result of his laches in making the defense. The case of *Pearson v. Darrington (supra)*, is an illustration of the principle. A judgment had been recovered against the administrator, founded on a note given by the intestate to merchants, to whom he had consigned cotton for its payment. A letter was among the papers of the intestate which could, and ought to have been seen by the administrators, from the payees, showing a sale of the cotton, and after applying the proceeds of sale to the payment of the note, there was a balance due the intestate. The administrator defended against the judgment, but was unsuccessful, not introducing proof of the facts shown by the letter, of the existence of which he was probably ignorant. This court said: "The exercise of proper caution and care required from Darrington an examination of the papers of the testator before judgment was rendered against him for the full amount of the note. Such an examination would have brought to his knowledge the letter. We hold, therefore, that Darrington could, by the exercise of proper diligence, have known of the defense, and was guilty of negligence in omitting to set it up." Credits for payments on the judgment were disallowed.

An exception to the general principle we have stated, prevails in this State in reference to the statute of limitations. The personal representative is not bound to plead the statute ; a failure to interpose it as a defense, does not deprive him of a right to a credit when accounting for the personal assets, for debts which in good faith he may have paid, or judgments fairly recovered against him, which he may have paid, though the statute barred all legal remedy on such debts.

But if, as in the present case, he refuses payment of a demand barred by the statute, on that specific ground, no other ground of defense existing, inducing litigation involving the estate in costs, and acts as his own attorney, he must exercise the same degree of diligence that would be required in making any other defense, and especially must this be true, when he stands in intimate and confidential relations to the creditor, which require that his conduct should be jealously scanned.   It is not possible for us to believe that if the administrator had exercised reasonable skill and diligence in the defense of the suit any court would have rendered judgment against him.   More than thirty-five years before the judgment this court had announced in terms not dubious, the principle to be found in the text-books in ordinary use by the profession:  " When an indorsed credit on a note is relied on for the purpose of taking the case out of the operation of the statute of limitations, such payment must be proved to have been made at the time it bears date."— *Watson v. Dale.* 1 Port. 247.   In June, 1838, in the case of *McGehee v. Greer* (7 Port. 537), the principle was again announced, and it was said:  "A payment on a note is, we think, precisely equivalent to an admission, that at the time of the payment, the debt is due; but it is necessary that the party relying on such payment should prove the date of the payment; to permit that fact to be established by the credit entered on the note, would be manifestly allowing the party relying on it to make evidence for himself."   It is apparent the administrator knew of this principle, and it is equally apparent he did not, as a diligent counsel, faithful to his client, making a real defense, present it to the court.   These authorities commending themselves to the common sense, and the sense of justice of all men, were not introduced or read, or referred to, or their application suggested.   Indeed, on the facts as shown by the record, the defense must have appeared to the court before which it was made, as more seeming than real.   The case is taken up out of its order, twelve months in advance of the time when it was triable in the ordinary course of proceeding.   The administrator makes the oral suggestion that the statute of limitations is a defense. Does he deny that the credits endorsed on the note were real payments made by his intestate?   He does not so inform the court.   Does he insist the plaintiff shall be required to prove these payments to have been made by the intestate to remove the bar?   He does not so inform the court.   It was not for the court to enter into a particular inquiry as to the facts on

which a defense submitted for its decision, in such general and indefinite terms, was grounded. In the case of *McGehee v. Greer (supra)*, the note was presented to the defendant, who said he was entitled to a credit on it for a claim on one Bend; and he was informed there was a credit on the note for such claim, and the note, with the credit, according to the best recollection of the witness, was shown him. The court say, considering a demurrer to the evidence : " We think, therefore, that as it is fair to infer that if the date of the credit had not been correct, the defendant would have objected to it for that cause—it must be considered as proven, that he admitted the credit made." What was the objection to the credits on this note which were presented to the Circuit Court at the time of the judgment? If the payments which they indicate, had been made by the intestate, the statute was not a bar.—*Taylor v. Perry*, 48 Ala. 240. No other objection to these credits was stated, (if this can be regarded as stated expressly,) than that they were indorsed on the note in the writing of one of the payees. The *judicial mind* was never called to pass, and did not pass on any other. A specific objection of this kind would naturally induce a court to suppose that no other could or was intended to be raised. The objection in itself is simply frivolous. The true ground of objection, that which if properly presented, would have been fatal to a recovery, that the plaintiff was bound to prove a payment by the intestate at the time of these credits, and these credits being in the handwriting of the payees, and not of any person having authority to bind the intestate, was not evidence against the administrator—was not presented. Not being presented, and the only fact shown being frivolous, and called for by the defendant, who, if really insisting on the statute of limitations, had no proof to offer, the court, we repeat, under the circumstances, would very naturally suppose the defense was seeming, not real. That if it was intended to require proof should be made of the credits as payments, the fact would be stated, as in the case of *McGehee v. Greer*, it was inferred if the defendant had denied the correctness of the date of the credit, he would have done so in express words when the credit was shown him. An attorney in this State, pursuing the course the administrator pursued, could not acquit himself of liability to his client, who had been mulcted into a judgment reasonable skill and diligence on his part could have avoided. An administrator being an attorney, who blends his professional relation with his representative capacity, is bound to exercise for himself the

same skill and diligence he could demand from an attorney employed by him. Every attorney owes his client reasonable skill and diligence, and is responsible for all injuries clients sustain which are traceable to a want of it.—*Goodman v. Walker*, 30 Ala. 482.

6. Again, it is apparent the administrator can not be reimbursed the payments made on this judgment, unless he is allowed to retain from the assets in his hands arising from the sales of the lands of the intestate, made under decrees of the court of probate. The money for which the lands were sold, as to the heirs, and as to all questions of charge or liability, or of descent or succession, must be regarded as a substitute for the lands.—*Williamson v. Mason*, 23 Ala. 488; *Chaney v. Chaney*, 38 Ala. 35. Between an administrator or executor, and the heir or devisee, no relation of privity exists, and the real assets can not be bound by any admission or acknowledgment made by the personal representative. Hence, though the executor or administrator is not bound to plead the statute of limitations, and by omitting to plead it, or by an express promise in writing, may revive a demand the statute bars, and thereby charge the personal assets, no such charge can be created on the real assets.—*Smith v. Bond*, 2 Ala. 660. He is the owner of the personal assets as trustee; but the lands descend, if not devised, to the heir, or if devised, pass *eo instanti* the death of the testator, to the devisee; and as to the heir or devisee, his admissions or acknowledgments are *res inter alios*. Said Chancellor KENT, in *Mowers v. White*, 6 Johns. Ch. 373: "The executor possesses the personal estate as trustee, and the heir the real estate as owner; and is he to be charged, at the mere pleasure of the executor, with the debts of his ancestor? Does it rest entirely in the discretion of the executor, whether the heir is or is not to be permitted to use the statute of limitations, which the law has provided as a measure of defense against a simple contract demand, which, perhaps, he knows to be unjust, though his ancestor has not left him the requisite proof? I can not bring my mind to assent to so unreasonable a proposition, nor to admit the heir is not entitled as against the creditor seeking to charge his estate, to use every lawful plea, unaffected by the act or admission of the executor." An administrator or executor paying a debt against the testator or intestate, is simply subrogated to the place of the creditor, and is clothed with his rights. If the debt is of a preferred class, the preference inures to him, if it is a charge on a part of the estate, to the benefit of the charge he

is entitled.—*McNeill v. McNeill*, 36 Ala. 109. If in the hands of the creditor, it would not charge any part of the assets; the administrator or executor has not power, by mere payment, to convert it into a charge. If he takes the responsibiblity, as he may, when in good faith, exercising the discretion with which the law vests him, of paying debts barred by the statute of limitations, he must be content with the right the creditor could have acquired, by his promise to pay,. a right to charge the personal assets only, he cannot create for himself the higher right to charge the real assets.—*Collinson v. Owens*, 6 Gill. and Johns. 4. A judgment against him, is as to the heir *res inter alias actœ*, and is not evidence· of a debt against the ancestor, and if payment of it is claimed from the real assets, or, if having paid it, he claims to retain from such assets, the heir may protect himself by showing the debt on which the judgment is founded was, at the time of its rendition, barred by the statute of limitations.—*Darrington v. Borland*, 3 Port. 38; *McCoy v. Nichols*, 4 How. (Miss.) 31; *Mason v. Peter*, 1 Mumf. 437; *Robertson v. Wright*, 17 Grattan, 534; *Vernon v. Valk*, 2 Hill Ch. 257. There was no ground on which the administrator was entitled to a credit for payments made on his judgment. The chancellor erred in sustaining the exceptions to the report of the· register, disallowing such credit.

7. The principle which is generally recognized, that a trustee, who is an attorney or solicitor, can make no charge against the trust estate for services rendered to it in his professional capacity, has not been adopted in this State. ·Since·· the case of *Harris v. Martin* (9 Ala. f·5), the rule has been to allow them compensation for profe͡sional services necssarily and *bona fide* rendered for the benefit, or called into use· by the necessities of the trust estate. The amount of such compensation is not to be ascertained by inquiring the usual and ordinary compensation for such services when rendered, and no other relation than that of attorney or solicitor is borne. The true inquiry is, as is said in *Harris v. Martin* (*supra*), " what would a prudent individual, invested with the functions of administrator, feel authorized to pay an attorney, taking into consideration all the circumstances of the estate ? " We are not prepared to dissent from the conclusions of the register as to the compensation allowed the administrator, as an attorney or solicitor in the several causes in the Circuit Court and the Court of Chancery of Henry county, except as to the case of *Owen, Adm'r v. Corbitt, Adm'r*, and *Gamble, Ex'r v. Fowler & Corbitt*,.

*Admr's,* to which we will refer hereafter. On questions of this character, referred to a register, and when he is compelled to draw conclusions of fact, dependent in a large degree on the evidence of witnesses examined before him, every reasonable presumption will be made in favor of his decision, and it will not be disturbed unless plainly wrong. *Kinsey v. Kinsey,* 37 Ala. 393. There should have been no compensation for professional services rendered in this court. In no one of the cases was there any service rendered which could not have been rendered by the administrator as an individual, and in the capacity of a suitor. Any party may appear in person in this, or any of the courts of the State, and submit their causes. The mere submission of a cause, without argument and without brief, requires no professional skill, and compensation for it as a professional service, cannot be allowed a trustee. The chancellor should have sustained the complainant's exceptions to the report of the register, allowing compensation for professional services in this court.

8. A reasonable compensation should have been allowed the administrator for the services of the attorney employed by him to resist the unsuccessful application to compel him to give a new bond. It was litigation into which he was forced in his representative capacity, and he is entitled to reimbursement for the expenses of it.— *Williamson v. Mason,* 23 Ala. 488. In this, as in all cases in which a trustee claims a credit, it must be shown he has paid the counsel the amount for whic a credit is claimed.—*Bates v. Vary,* 40 Ala. 421. But no allowance should have been made to the administrator, for any professional service rendered by him in that proceeding. Having employed counsel to defend it, and no necessity existing for any assistant or additional counsel, it would be unjust to impose on the estate the burthen of compensation to the administrator for an unnecessary service. It is not material that the compensation allowed to both, is equivalent only to reasonable compensation to the attorney he employed. If the attorney was satisfied with less than reasonable compensation, the estate, not the administrator, must profit by it.

9. The compensation for professional services in the case of *Owens, Adm'r v. Corbitt, Adm'r,* was not ascertained on a proper basis and the inquiries before the register were not directed to its proper ascertainment. The *necessity of professional services,* was in respect to this case the most material inquiry. All service rendered by the administrator,

(36)

[Teague et al. v. Corbitt, Administrator.]

before the heirs and distributees intervened, was in the preparation and filing answer to the original bill. The heirs intervened by leave of the court, and employed counsel to defend the suit, who assumed the duty and responsibility of rendering whatever professional service the case should require. The administrator, if he continued to render professional service in it, rendered services not necessary, and for which compensation as solicitor should not have been allowed him. Reasonable compensation for preparing and filing the answer, should have been allowed, but no more.

10. The suit of Gamble, executor, against Fowler, and, Corbitt, administrator, grew out of the wrongful act and negligence of Corbitt, in suspending, and failing to keep alive the execution against Fowler. A loss of the judgment in consequence of the act of the administrator in suspending, or the neglect to keep the execution alive, would have been visited on him. Compensation for his services as a solicitor in defense of this suit, should not have been allowed. An administrator can not by his negligence, or his wrongful act, involve the estate in litigation, and compel it to bear the costs.—*Savage v. Dickson,* 16 Ala. 253.

11. An administrator is entitled to an allowance on final settlement for reasonable counsel fees paid by him for services rendered, except in the maintenance of improper contests with the heirs or distributees. The contest must, in the absence of some peculiar fact, be regarded as improper, when it is unsuccessful.—*Anderson v. Anderson,* 37 Ala. 683; *Harris v. Parker,* 41 Ala. 604; *Pinkard v. Pinkard,* 24 Ala. 250. This rule was not observed by the register in the allowance of a fee to the administrator for a defense of the present suit. The exceptions of the complainants to the report of the register should have been sustained to the extent we have indicated, and overruled in other respects. Let the decree be reversed and the cause remanded for further proceedings not inconsistent with this opinion.